DICKIE MURCHISON, JR., ET AL. *v.* CIVIL SERVICE COMMISSION OF THE CITY OF WATERBURY ET AL.
(15098)

PETERS, C. J., AND BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued March 14—decision released July 4, 1995

*James R. Smith*, for the appellants (plaintiffs).

*Thomas K. McDonough*, assistant corporation counsel, with whom, on the brief, were *John F. Gorman*, assistant corporation counsel, and *Pamela J. Casagrande*, assistant corporation counsel, for the appellees (named defendant et al.).

*J. William Gagne, Jr.*, with whom, on the brief, was *Gregory C. Norsigian*, for the appellee (intervening defendant).

BERDON, J. The principal issue in this appeal is whether, pursuant to General Statutes § 7-474 (g),[1] a dispute regarding the eligibility of Waterbury firefighters for promotion to the position of fire lieutenant is subject to the grievance procedure of the collective bargaining agreement between the city of Waterbury and the firefighters union. We conclude that it is not.

The following facts are undisputed. On July 11, 1988, the plaintiffs, Dickie Murchison, Jr., and Michael Farrell, became firefighters for the city of Waterbury and joined the intervening defendant Waterbury Fire Fighters Association, Local 1339, AFL-CIO (union). Previously, Murchison had been employed as a firefighter by the Ridgefield fire department and Farrell had been similarly employed by the New Britain fire department.

---

[1] General Statutes § 7-474 (g) provides in pertinent part: "Nothing herein shall diminish the authority and power of any municipal civil service commission, personnel board, personnel agency or its agents . . . to conduct and grade merit examinations and to rate candidates in the order of their relative excellence from which appointments or promotions may be made to positions . . . . The conduct and the grading of merit examinations . . . shall not be subject to collective bargaining, provided once the procedures for the promotional process have been established by the municipality, any changes to the process proposed by the municipality concerning the following issues shall be subject to collective bargaining: (1) The necessary qualifications for taking a promotional examination . . . ."

On February 26, 1992, the named defendant, the civil service commission of the city of Waterbury (commission), announced a promotional examination for the position of fire lieutenant. The closing date to file applications for the examination was March 20, 1992, and the announcement included the requirement that each candidate have "[f]our years firefighting experience comparable to Waterbury Fire Service in a qualitative and quantitative sense." The union, the commission and Waterbury had formally agreed upon this requirement of previous firefighting experience on December 11, 1980, when they signed a certain contract known as the "St. John agreement."[2]

The plaintiffs successfully completed the examination. On June 26, 1992, the commission's director of personnel determined that both plaintiffs were eligible to be promoted immediately and notified them that they would be promoted on June 29, 1992.[3] Although

[2] The St. John agreement resulted from a dispute regarding the credit given for previous service with other fire departments to Edward St. John when he was appointed fire marshall of Waterbury. See *Beccia* v. *Waterbury*, 185 Conn. 445, 441 A.2d 131 (1981).

The St. John agreement purports to make no changes in the preexisting procedure for considering previous firefighting service in determining whether a candidate is qualified to take a promotional examination. Part (3) of the St. John agreement provides that "the [civil service] Commission *agrees to continue the following policy* concerning the qualifications of applicants to take promotional exams . . . [a]ny City employee-applicant who claims credit for experience and training as a member of a volunteer fire department . . . or as a permanent paid member of a paid fire department other than the Waterbury Fire Department . . . in order to qualify to take a promotional exam or as a basis for [experience and training] credit on such exam . . . [shall receive credit] if, and only if, it is found that after a functional comparison of work related experiences in a *qualitative and quantitative* sense that the position/rank in question in the volunteer or non-Waterbury [f]ire department is comparable to the same position or rank in the Waterbury Fire Department. . . ." (Emphasis added.)

[3] The civil service conducts and grades merit examinations. The Waterbury civil service regulations make the director of personnel responsible for conducting the examinations and determining who is qualified to take

on the closing date for applications for the examination, the plaintiffs were fifteen calendar days short of completing four years of service with the Waterbury fire department, the director of personnel determined that both Murchison and Farrell had attained the quantitative and qualitative equivalent of the four year requirement by virtue of their previous experience as firefighters in Ridgefield and New Britain, respectively.

The union disagreed with the director's decision to credit the plaintiffs' previous service, and on June 29, 1992, it submitted a grievance to the fire chief in accordance with the procedure in the collective bargaining agreement between the union and Waterbury. In the grievance, the union claimed that the personnel department "has, or is in the process of certifying certain ineligible candidates for the position of Lieutenant in the Fire Department," and that these candidates did not comply with the four year requirement of equivalent service. The fire chief declined to take action on the union's grievance and deferred to the next level of the grievance procedure, which requires that the grievance be submitted to the mayor.

On the same day, June 29, 1992, the union submitted its grievance to the mayor of Waterbury, Edward D. Bergin, who responded immediately. In his written decision, Bergin sustained the union's appeal and directed the director of personnel to certify only those candidates who had comparable service in cities of comparable size.[4] On July 8, 1992, the director of person-

them. Waterbury Civil Service Rules and Regs., c. VIII, § 3. The initial determination of eligibility for promotion based on the results of the merit examinations is also made by the director of personnel as agent for the commission.

[4] The mayor's letter of June 29, 1992, to Patrick J. Reilly, vice president of the Waterbury Fire Fighters Association, provides in pertinent part: "After reviewing the agreement of Waterbury Fire Fighters Association, specifically those sections dealing with quantitative and qualitative [ser-

nel notified the plaintiffs of Bergin's decision and informed them that, in compliance with the order of the mayor, their eligibility for promotion to fire lieutenant would be postponed until July 11, 1992.[5] As a result of that decision by the director of personnel, which had been directed by the mayor, the plaintiffs were not promoted to the rank of fire lieutenant.

The plaintiffs appealed from the July 8, 1992 decision of the director of personnel to the commission claiming that, under § 7-474 (g), their eligibility was not a proper subject for the grievance procedure in the collective bargaining agreement. The plaintiffs claimed that by sustaining the grievance and directing the director of personnel to take into account only prior service to cities of comparable size, the mayor had acted illegally.[6] On September 1, 1992, the commission heard and rejected the plaintiffs' appeals by a vote of three to two.

The plaintiffs then appealed from the decision of the commission to the trial court claiming that the com-

vice], I sustain the union's grievance and further direct the [director of personnel] to only certify those candidates that have comparable service in cities of comparable size."

[5] Both plaintiffs received identical letters from the director of personnel which provide in pertinent part: "[P]rior to establishing the eligibility list for the position of Fire Lieutenant . . . a thorough review was conducted of all your experience as a firefighter, both within and outside of the Waterbury Fire Department, and it was determined that you met the following minimum requirements on June 26, 1992, the day the eligibility list was established: 'Four years firefighting experience comparable to Waterbury Fire Service in a qualitative and quantitative sense. . . .'

"On June 29, 1992, the Fire Union filed a grievance which requested that the firefighting experience you gained outside the Waterbury Fire Department be deemed incomparable to Waterbury firefighting experience, thus postponing your eligibility for certification to the position of Fire Lieutenant until July 11, 1992. This grievance was sustained at Step 2 of the grievance procedure prescribed by the Fire Contract. . . ."

[6] The plaintiffs also claimed that the mayor's intervention violated the collective bargaining agreement and the St. John agreement. Because we decide this case under § 7-474 (g), we do not discuss these claims.

mission had acted illegally, arbitrarily and in abuse of its discretion. The trial court determined that the involvement of the mayor and the union in the grievance proceeding had not rendered the commission's decision illegal for three reasons. First, the trial court determined that the union had challenged, and the mayor had ruled on, the "eligibility qualifications" of certain individuals to sit for the exam, and not on the conduct and the rating of a merit examination. The court concluded that such a determination regarding eligibility qualifications is a proper subject of the union grievance procedure because it is outside the scope of § 7-474 (g).

Second, the court determined that the union's action did not violate § 7-474 (g) because "[w]here . . . the gravamen of the plaintiffs' complaint concerns the fairness of the [defendants'] subsequent changes to the established qualifications necessary to proceed with the promotional process the grievance procedure must be followed." (Internal quotation marks omitted.) Although the court did not explain the factual foundation for this holding, it is reasonable to assume that it was in response to the defendants' contention that there had been a change in the initial procedure to determine the necessary qualifications for the position of fire lieutenant, and that therefore the personnel director's determination of the plaintiffs' eligibility was within the exception to the statutory exemption from collective bargaining.

Finally, the trial court stated that, even if the grievance procedure should not have been followed, the commission had the ultimate authority regarding matters relating to the eligibility of candidates for promotion, and the court determined that the commission had decided, on the basis of the evidence before it, that fire service to New Britain or Ridgefield is not comparable in a qualitative and quantitative sense to Water-

bury fire service. Therefore, the trial court concluded that the commission had not acted illegally, arbitrarily or in abuse of discretion in refusing to sustain the plaintiffs' appeals. Accordingly, the trial court dismissed the plaintiffs' appeal.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The plaintiffs make several claims on appeal[7] but essentially their argument is twofold. The plaintiffs first contend that under § 7-474 (g), the issue of whether the plaintiffs were qualified to take the examination and receive a promotion is not subject to collective bargaining. Furthermore, the plaintiffs claim that there was no change in the necessary qualifications for the position of fire lieutenant that would permit this dispute to be resolved through the grievance procedure under the statutory exceptions that permit collective bargaining. Accordingly, the plaintiffs claim that the trial court improperly determined that the dispute regarding their eligibility was properly a subject for the grievance procedure. Second, the plaintiffs claim that the trial court improperly determined that the commission reviewed the issue of whether the plaintiffs were entitled to credit for their service to other fire departments on its merits and properly rejected the appeal. We agree with the plaintiffs on both claims.

---

[7] The plaintiffs claim on appeal that the trial court improperly determined that: (1) the mayor's decision to sustain the grievance filed by the union was consistent with the labor contract; (2) there had been changes in the promotional process that were sufficient to bring the determination of eligibility within the exception of § 7-474 (g) for purposes of collective bargaining; (3) the mayor's decision to sustain the union's grievance did not violate § 7-474 (g); (4) the evidence before the commission supported its decision that the fire service in New Britain and Ridgefield is not comparable in a qualitative and quantitative sense to Waterbury fire service; and (5) the commission did not act illegally, arbitrarily or in abuse of its discretion when it rejected the plaintiffs' appeals.

## I

We first address the plaintiffs' claim that the trial court incorrectly determined that this dispute was the proper subject of a union grievance to the mayor, and that the mayor's decision to deny the plaintiffs credit for their previous service had been valid. Because the determination of this issue requires us to interpret the scope of § 7-474 (g) and statutory interpretation is a question of law, our review is de novo. *Andover Limited Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995). Accordingly, we begin our analysis with the pertinent regulations of the town of Waterbury and with § 7-474 (g).

According to the civil service rules and regulations for Waterbury, the director of personnel is responsible for determining whether a candidate meets the minimum qualifications to sit for promotional examinations as well as for establishing "eligible lists."[8] Waterbury Civil Service Rules and Regs., c. V, §§ 7–8. Any action of the director of personnel may be appealed to the commission "whose decision . . . shall be final unless otherwise specified in these regulations or the Charter Amendment." Id., c. I, § 6.

Section 7-474 (g) provides that nothing under the statutory scheme that governs negotiations and agreements between municipalities and unions "shall diminish the authority and power of any municipal civil service commission, personnel board, personnel agency or its agents established by statute, charter or special act to conduct and grade merit examinations and to rate candidates in the order of their relative excellence from which appointments or promotions may be made to positions in the competitive division of the classified

---

[8] An eligible list constitutes the ranking of candidates pursuant to the results of a competitive merit examination.

service of the municipal employer served by such civil service commission or personnel board. The conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from such examinations and the initial appointments from such lists and any provision of any municipal charter concerning political activity of municipal employees shall not be subject to collective bargaining, provided once the procedures for the promotional process have been established by the municipality, any changes to the process proposed by the municipality concerning the following issues shall be subject to collective bargaining: (1) The necessary qualifications for taking a promotional examination; (2) the relative weight to be attached to each method of examination; and (3) the use and determination of monitors for written, oral and performance examinations. In no event shall the content of any promotional examination be subject to collective bargaining."

## A

We must first decide whether the determination that a candidate is qualified to take a promotional examination and receive a promotion based on comparable fire department service is subject to collective bargaining. This inquiry requires us to determine whether conditions relating to the eligibility of a candidate to take a merit examination fall within the intended scope of the "conduct and the grading of merit examinations" for the purposes of § 7-474 (g). The defendants argue that the dispute was properly resolved by the mayor through the grievance procedure because issues relating to the eligibility of candidates to take an examination are not part of the "conduct and the grading" of such examinations and therefore are not exempted from collective bargaining under the labor contract or § 7-474 (g). We disagree.

In order to determine what the conduct of a merit examination is intended to encompass, we look to the well established principles of statutory interpretation. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . ." (Citation omitted; internal quotation marks omitted.) *Petco Insulation Co.* v. *Crystal,* 231 Conn. 315, 321, 649 A.2d 790 (1994). In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation. *Broadley* v. *Board of Education,* 229 Conn. 1, 6, 639 A.2d 502 (1994); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987).

As it was originally enacted, § 7-474 (g) exempted from collective bargaining, without exception, all matters pertaining to the conduct and the grading of merit examinations and the subsequent rating of candidates. In 1982, the legislature adopted No. 82-212, § 1, of the 1982 Public Acts (P.A. 82-212) which amended § 7-474 (g) to specify that proposed changes for the necessary qualifications for taking the promotional examinations would be subject to collective bargaining. Because P.A. 82-212 adopted an exception for proposed *changes* to the necessary qualifications for taking a promotional examination, it is reasonable to assume that the legislature intended qualifications for taking promotional examinations to be within the scope of the "conduct . . . of merit examinations." Therefore, we conclude that the method of determining the necessary qualifications for taking the examination that was in

effect when P.A. 82-212 was adopted is implicitly within the scope of the conduct of the examination and is not subject to collective bargaining.

The legislative history of P.A. 82-212 reinforces our interpretation. Statements made during public hearings, and during debates in the House of Representatives and the Senate, indicate that § 7-474 (g) as amended by P.A. 82-212, § 1, was generally intended to exempt the entire promotional examination process from collective bargaining and that the exceptions should be strictly construed. It was noted at the public hearing that, prior to the adoption of the amendment, § 7-474 (g) excluded any determination of "who qualifies to take the exam" from collective bargaining. Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1982 Sess., p. 95, remarks of Greg Berg, director of management services for the Connecticut Conference of Municipalities. Municipalities were vehemently opposed to this change because they feared that requiring any part of the promotional examination process to be collectively bargained "would sharply diminish the authority of the civil service commissions and personnel boards." Id.; see 25 S. Proc., Pt. 9, 1982 Sess., pp. 2761–62, remarks of Senator John G. Matthews.

The unions and legislative proponents of the act argued, however, that the promotional examination process had been abused, and that arbitrary changes in promotional policy had often been unilaterally enacted by the municipalities in order to promote certain individuals over others. See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1982 Sess., pp. 105–106, 134–35;[9] 25 S. Proc., Pt. 9,

[9] Raymond Shea, president of the Uniformed Fire Fighters Association, testified that "there are some inequities, obviously, developed in promotional examinations and that unilateral changes by the employer [have] caused unrest among the work force in disputes with the employer. The difficulty

1982 Sess., pp. 2763-64.[10] The proponents emphasized that the only redress for such abuses was through the court system, which was prohibitively expensive and time consuming. Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1982 Sess., p. 127, remarks of Jerry Herskowitz, president of the Connecticut State Police Union.

The General Assembly addressed the concerns of both the proponents and the opponents during discussions regarding the merits of the proposed amendment, and set forth the intended function of the act. Section 7-474 (g) provides municipalities with the right to establish the promotional examination process of their choice without being subject to collective bargaining but requires collective bargaining for "changes to the process" regarding the qualifications for an examination. See 25 S. Proc., Pt. 9, 1982 Sess., pp. 2758-59;[11] 25

comes over the fact that we have no redress to the grievance procedure when improprieties, alleged or certain, are found in the examination process." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1982 Sess., pp. 105-106.

Michael Ferrucci, council member of the American Federation of State, County and Municipal Employees, testified that merit systems "are nothing more than either a system which involves favoritism, discrimination, nepotism, the whole host of matters that generally come about when the merit system results in some of the atrocious situations that have developed." Id., pp. 134-35.

[10] Senator Clifton A. Leonhardt spoke in support of the act stating: "What this bill would do, in effect, is protect municipal employees against politics, against political intrusion in the sense that unilateral changes in these qualifications and relative weights could occur at a time of change of administration. So that by putting these factors into the collective bargaining process, we are guaranteeing, in effect, a nonpolitical resolution, taking it out of the purely political process . . . ." 25 S. Proc., Pt. 9, 1982 Sess., p. 2763.

[11] Senator Michael J. Skelley explained, as an example, how the amendment would impact the relative weight of each examination method—the second exception permitting collective bargaining. "What the bill does is it allows the municipality at the current time to establish any weight that will be given to a municipal exam. For instance, the municipality, may, in

H.R. Proc., Pt. 10, 1982 Sess., pp. 3082–83.[12] In limiting collective bargaining to changes in the promotional examination process that altered the initial determination of qualifications to take merit examinations, the legislature must have considered the initial determination of the necessary qualifications to be within the promotional examination process and, therefore, within the scope of the conduct of merit examinations for the purposes of § 7-474 (g).

In this case, the initial determination of the necessary qualifications for a candidate with prior service was made when the commission executed the St. John agreement in 1980. The agreement provides that an applicant who claims credit for service to a fire department other than Waterbury's in order to qualify for a promotional examination will receive such credit if the other fire department service is deemed to be qualitatively and quantitatively comparable to the equivalent position or rank in the Waterbury fire department. This is precisely the standard set forth in the announcement of the examination for fire lieutenant that prompted the plaintiffs to seek promotions. It is also the standard that the director of personnel employed when he determined that the plaintiffs properly qualified to take the examination and were entitled to the resulting promotions by virtue of their other service. The director's decision, therefore, was not a change in the process regarding qualifications necessary to sit for the exami-

fact, give certain weights for oral, written and work experience. The municipality has the right to establish exactly what weight each situation under the exam will determine who, in fact, will receive the promotion. If, in fact, they change the procedure, either during or after a period of time, then you could collectively bargain the issue." 25 S. Proc., Pt. 9, 1982 Sess., pp. 2758–59.

[12] Representative William A. Kiner explained the amendment when he moved for its adoption: "Mr. Speaker, once the procedures for an examination have been established, this amendment would prevent the towns from unilaterally changing only those 3 procedures that were listed in the amendment." 25 H.R. Proc., Pt. 10, 1982 Sess., pp. 3082–83.

nation, but was merely an application of preexisting qualifications under § 7-474 (g). We conclude that the decision to grant the plaintiffs credit for their service to the fire departments of other cities was not subject to collective bargaining and was therefore not subject to the union's grievance procedure.

B

The defendants argue, however, that even if the particular decision of the director at issue here did not constitute a "change" in the process, collective bargaining was required because the process itself had been changed in 1983, after the 1982 amendment of § 7-474 (g). The defendants point to the civil service job description for fire lieutenant that includes a general statement of duties and distinguishing features of the position. It requires that the candidate have "[f]our years firefighting experience [c]omparable to Waterbury Fire Service in a qualitative and quantitative sense." In the upper right hand corner of the document appears: "Revised C.S.C. 9/6/83; Appvd. Bd. of Ald. 9/19/83." The defendants argue that this indicates the city changed the eligibility requirements for the merit examination pursuant to the St. John agreement. This argument is without merit.

The defendants have been unable to point to any change in the necessary qualifications for the position of fire lieutenant that was made subsequent to the enactment of P.A. 82-212, § 1. Although a 1983 revision is indicated, there is nothing in the record that shows any alteration in the necessary qualifications for taking the examination for fire lieutenant. On the contrary, the job description includes the same qualification criteria that were articulated in the St. John agreement of 1980, which memorialized the method for determining whether credit would be granted for ser-

vice to other fire departments.[13] We conclude that, insofar as this record indicates, there have been no changes in the necessary qualifications for taking the promotional examination for fire lieutenant that would require collective bargaining under § 7-474 (g).

## II

Our conclusion that the grievance procedure should not have been used does not necessarily vindicate the plaintiffs' claim. The trial court determined that even if the grievance procedure was improper in this case, the plaintiffs' appeal had to be dismissed because the commission had made a determination on the merits that the plaintiffs were not eligible to take the examination. We disagree with the trial court that the commission ever made such a finding.

The only issue before the commission was whether this dispute was properly submitted to the grievance procedure. The plaintiffs did not appeal the merits of the personnel director's decision which, without the illegal directive of the mayor, would have favored the plaintiffs. The reversal by the director of personnel of his initial determination favoring the plaintiffs was not based upon the established method for determining qualifications, but was precipitated solely by the order of the mayor pursuant to the union's grievance. The issue before the commission, therefore, was whether a dispute regarding the eligibility for a promotional examination based on prior service credit may be submitted to the grievance procedure included in the collective bargaining agreement between the union and Waterbury, and not whether the plaintiffs were in fact eligible for credit.

Furthermore, the commission did not make a finding as to whether the plaintiffs' service was "compara-

---

[13] See footnote 2.

ble . . . in a qualitative or quantitative sense" to the Waterbury fire department service. According to the minutes of the commission meeting on September 1, 1992, the issue of whether the plaintiffs were entitled to service credit was discussed. One of the commissioners repeatedly reminded the commission, however, that the issue before it was whether the matter was grievable and not whether the plaintiffs were entitled to the credit. Furthermore, the commission voted solely on the issue raised in the plaintiffs' appeals.

The decision of an administrative agency is reversible on appeal if the court determines that the agency acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, U.S. , 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994). We conclude that the commission acted illegally by affirming the actions of the director, as mandated by the mayor, because, under § 7-474 (g), the dispute was not subject to collective bargaining and that the trial court improperly determined that the commission had evaluated the case on its merits.

The judgment is reversed, and the case is remanded with direction to sustain the appeal and to reinstate the original decision of the director of personnel determining the plaintiffs' immediate eligibility for promotion.

In this opinion the other justices concurred.