[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5847
The plaintiff, Waterbury Firefighters Association, Local 1339 (union), is the exclusive collective bargaining representative of the firefighters employed by the city of Waterbury. See Municipal Employee Relations Act (MERA), General Statutes §§ 7-467, et seq. Waterbury firefighters Dickie Murchison, Jr. and Michael Farrell complained to the Connecticut State Board of Labor Relations (Labor Board) that the plaintiff union and the city of Waterbury improperly engaged in illegal collective bargaining and entered into an illegal agreement, practices prohibited under MERA. The complaint also alleged that the union breached its duty of fair representation to Murchison and Farrell.
Following an extensive contested case hearing the Labor Board issued a decision on April 18, 1997. The decision, relying on the principles of res judicata and collateral estoppel, applied our Supreme Court's decision in Murchisonv. Civil Service Commission, 234 Conn. 35 (1995), and found that the city and union engaged in prohibited practices. The Labor Board concluded therefore, that the union and the city had violated MERA by engaging in illegal bargaining and entering into an illegal agreement. The decision further found that the union violated MERA by breaching its duty of fair representation. The court sustains the appeal solely on the issue involving the violations of the duty of fair representation.
The plaintiff filed a timely appeal on May 28, 1997, pursuant to the Uniform Administrative Procedures Act (UAPA) General Statutes §§ 4-166, et seq., and General Statutes § 4-183. The record was filed by the Labor Board on August 29, 1997. Briefs were filed by the plaintiff union on December 18, 1997, and the Labor Board on January 27, 1998. The city of Waterbury and the complainants Murchison and Farrell were named as defendants in the appeal. The city of Waterbury entered an appearance but has not otherwise participated in the appeal. Murchison and Farrell have not participated in the appeal. The Union and Labor Board were heard in oral argument on April 7, 1998.
The undisputed facts underlying this case have been set CT Page 5848 forth in a related case, Murchison v. Civil ServiceCommission, supra, 234 Conn. 38-40.
 On February 26, 1992, the named defendant, the civil service commission on of the city of Waterbury (commission), announced a promotional examination for the position of fire lieutenant. The closing date to file applications for the examination was March 20, 1992, and the announcement included the requirement that each candidate have "[f]our years firefighting examination was March 20, 1992, and the announcement included the requirement that each candidate have "[f]our years firefighting experience comparable to Waterbury Fire Service in a qualitative and quantitative sense." The union, the commission and Waterbury had formally agreed upon this requirement of previous firefighting experience on December 11, 1980, when they signed a certain contract known as the "St. John agreement."
 [Murchison and Farrell] successfully completed the examination. On June 26, 1992, the commission's director of personnel determined that both [Murchison and Farrell] were eligible to be promoted immediately and notified them that they would be promoted on June 29, 1992. Although on the closing date for applications for the examination, [Murchison and Farrell] were fifteen calendar days short of completing four years of service with the Waterbury fire department, the director of personnel determined that both Murchison and Farrell had attained the quantitative and qualitative equivalent of the four year requirement by virtue of their previous experience as firefighters in Ridgefield and New Britain, respectively.
 The union disagreed with the director's decision to credit the . . . previous service, and on June 29, 1992, it submitted a grievance to the fire chief in accordance with the procedure in the collective bargaining agreement between the union and Waterbury. In the grievance, the union claimed that the personnel department "has, or is CT Page 5849 in the process of certifying certain ineligible candidates for the position of Lieutenant in the Fire Department," and that these candidates did not comply with the four year requirement of equivalent service. The fire chief declined to take action on the union's grievance and deferred to the next level of the grievance procedure, which requires that the grievance be submitted to the mayor.
 On the same day, June 29, 1992, the union submitted its grievance to the mayor of Waterbury, Edward D. Bergin, who responded immediately. In his written decision, Bergin sustained the union's appeal and directed the director of personnel to certify only those candidates who had comparable service in cities of comparable size. On July 8, 1992, the director of personnel notified the plaintiffs of Bergin's decision and informed them that, in compliance with the order of the mayor, their eligibility for promotion to fire lieutenant would be postponed until July 11, 1992. As a result of that decision by the director of personnel, which had been directed by the mayor, [Murchison and Farrell] were not promoted to the rank of fire lieutenant.
(Footnotes omitted.)
The court first addresses the propriety of the Labor Board's reliance on the preclusive effect of Murchison in finding that the union and the city engaged in prohibited practices. In Murchison the issue and its resolution are set forth in the opening paragraph:
 The principal issue in this appeal is whether, pursuant to General Statutes § 7-474(g), a dispute regarding the eligibility of Waterbury firefighters for promotion to the position of fire lieutenant is subject to the grievance procedure of the bargaining agreement between the city of Waterbury and the firefighter's union. We conclude that it is not.
(Footnotes omitted.) Murchison v. Civil Service Commission, CT Page 5850 supra, 234 Conn. 37.
The plaintiff attempts to distinguish this case from the principal issue in Murchison but is unsuccessful in that attempt. Noting that Murchison focused on eligibility for promotion and the use of the grievance procedure to address that issue, the plaintiff asserts that this case concerns facts surrounding the grievance procedure not its use. However, the underlying complaints specifically allege illegal collective bargaining and conspiracy to enter into an agreement to implement an illegal agreement. The complaints include the following "Discussion": "The grievance filed by the . . . union, which was granted by the Mayor . . . related to subject matter which is expressly excluded from the grievance procedure . . . [such as] matters enumerated in Section 7-474 (g) of the Connecticut General Statutes. . . ." (Internal quotation marks omitted.)
The issue of the legality of the agreement to disqualify Murchison and Farrell has been resolved, and it is essentially the issue confronting the Labor Board on the legality of the city and union's agreement under MERA. The city and union could not relitigate the issue before the Labor Board. See, Commissioner of Motor Vehicles v. DeMilo Co., 233 Conn. 254, 267 (1995); Milligan v. Rioux,229 Conn. 716, 751 (1994); Scalzo v. Danbury, 224 Conn. 124, 127
(1992); Aetna Casualty Surety Co. v. Jones, 220 Conn. 285,296 (1991); and State v. Ellis, 197 Conn. 436, 466 (1985). Thus, the Labor Board's conclusion that the union and city engaged in illegal collective bargaining is correct.
The Labor Board also concluded that the union breached its duty of fair representation to Murchison and Farrell. On this issue the court finds for the plaintiff union and sustains the appeal.
The union as the exclusive representative of all workers within its bargaining unit has the duty to fairly represent all members of its bargaining unit. Vaca v.Sipes, 386 U.S. 171 (1967). General Statutes § 7-468 (c) provides in pertinent part: "When an employee organization has been designated in accordance with the provisions of §§ 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit, it . . . CT Page 5851 shall be responsible for representing the interests of all such employees without discriminating."
The Labor Board concluded that: "The Union breached its duty of fair representation to Murchison and Farrell by filing a grievance challenging the city's promotional list for fire lieutenant on June 29, 1992, without a meeting and a vote in accordance with Article VII § 5 of the union's bylaws."
In Vaca v. Sipes, supra, 386 U.S. 190, the Supreme Court held: "[a] breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminating or in bad faith."
In determining that such egregious conduct occurred in the present case, the Labor Board apparently relied on the principle articulated in Griffin v. Auto Workers,469 F.2d 181, 183 (4th Cir. 1972): "[w]ithout any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation."
 To sustain a member's action against his union under Griffin standards, it is not necessary that the union's breach be intentional. A union representative could be so indifferent to the rights of members or so grossly deficient in its conduct purporting to protect the rights of members that the conduct could be equated with arbitrary action.
Wyatt v. Interstate Ocean Transp. Co., 623 F.2d 888, 891
(4th Cir. 1980). Also, see Walker v. ConsolidatedFreightways, Inc., 930 F.2d 376 (4th Cir. 1991).
From this line of authority the Labor Board reasoned:
 The above referenced cases support the view that a union's failure to abide by its own bylaws or constitution in a manner that compromises the right of a union member can constitute arbitrary action and/or bad faith which is sufficient to be CT Page 5852 a breach of the duty of fair representation. The issue before us is whether the union's conduct in this case is so egregious that it breaches the duty of fair representation.
(Decision, p. 15.)
The Labor Board, however, completely disregarded a highly relevant and recent discussion of the duty of fair representation by our Supreme Court in Labbe v. HartfordPension Commission, 239 Conn. 168, 193-95 (1996):
 A union must represent its members in good faith. This duty of fair representation derives from the union's status as the sole bargaining representative for its members. As such, the union has the exclusive right and obligation to act for its members and to represent their interests. See General Statutes § 7-468 (d); Tedesco v. Stamford, 222 Conn. 233, 247-48 (1992); Masto v. Board of Education, 200 Conn. 482, 486-87
(1986); see also Air Line Pilots v. O'Neill, 499 U.S. 65 (1991); Vaca v. Sipes, supra, 386 U.S. 177; Steele v. Louisville Nashville R. Co., 323 U.S. 192 (1944). Because the individual members are thereby deprived of the opportunity to represent themselves or to select a minority union, this duty of fair representation is a necessary "`bulwark to prevent arbitrary union conduct. . . .'" Brieninger v. Sheet Metal Workers International Assn., Local Union No. 6, 493 U.S. 67, 87 (1989); DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164 n. 14 (1983); Vaca v. Sipes, supra, [386 U.S.] 182.
 The duty of fair representation requires the union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, supra, 386 U.S. 177; see Air Line Pilots v. O'Neill, supra, 499 U.S. 74; Chauffeurs, Teamsters Helpers, Local No. 391 v. Terry, 494 U.S. 558, 563 (1990). A union breaches this duty if it acts CT Page 5853 arbitrarily, discriminatory or in bad faith. See Air Line Pilots v. O'Neill, supra, [499 U.S.] 67; Vaca v. Sipes, supra, [386 U.S.] 190.
 In reviewing the substantive decisions of a union, a court engages in a highly deferential review in light of the "wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Air Line Pilots v. O'Neill, supra, 499 U.S. 78. A union does not violate its duty of fair representation if it, in good faith, "sacrifice[s] particular elements of the compensation package" to the detriment of some employees because the chosen elements would likely result in increased benefits for the employees in the bargaining unit as a whole. Schneider Moving Storage Co. v. Robbins, 466 U.S. 364, 376 (1984); cf. Barrentine v. Arkansas Best-Freight System, Inc., 450 U.S. 728, 742 (1981); Humphrey v. Moore, 375 U.S. 335, 349
(1964); Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475, 488 (1993). Indeed, because "[t]he whole process of collective bargaining is one of give and take [and] compromise . . . [i]f a union breached its duty of fair representation of unit members every time it made a concession, collective bargaining would be impossible." (Internal quotation marks omitted.) Connecticut Education Assn. v. State Board of Labor Relations, 5 Conn. App. 253, 275, cert. denied, 197 Conn. 814, 815 (1985).
 In light of these principles, we conclude that a "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." (Citation omitted; internal quotation marks omitted.) Air Line Pilots v. O'Neill, supra, 499 U.S. 67; see Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). Furthermore, a union's actions are in bad faith if the union acts fraudulently or deceitfully; Humphrey v. Moore, supra, 375 U.S. 348-49; or does not act to further the best interests of its CT Page 5854 members.
(Emphasis added.)
In Labbe the bargaining union members claimed bylaw violations by the union leaders as evidencing bad faith.
 The plaintiffs contest that because Quigley and Grodecki [the union officers] negotiated the August agreement `secretly' and in violation of union bylaws, they must have been acting in bad faith. . . . As such, the plaintiffs contend Quigley and Grodecki violated the bylaws by not involving all the proper union officials in the negotiations, not informing the membership of the negotiations, and never asking the membership to ratify the August agreement.
Labbe v. Hartford Pension Commission, supra,239 Conn. at 198.
Assuming that the plaintiffs could prove the bylaw violations the court concluded:
 we conclude that the plaintiffs did not adduce sufficient evidence to prove bad faith . . . the plaintiffs simply failed to provide evidence that Quigley and Grodecki acting intentionally or dishonestly to mislead the membership.
The Labor Board also fails to cite a more recent United States Supreme Court case addressing duty of fair representation case. Air Line Pilots Association v.O'Neill, 499 U.S. 65 (1991).
O'Neill further clarifies the standard for analyzing an alleged breach of the duty of fair representation:
 We hold that the rule announced in Vaca v. Sipes, 386 U.S. 171, 190 (1967) — that a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith" — applies to all union activity, including contract negotiation. We hold that a union's actions are arbitrary only if, in light of CT Page 5855 the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953), as to be irrational.
Air Line Pilots v. O'Neill, supra, 499 U.S. 67.
The Labor Board's "Conclusions of Law"[1] is inconsistent with the holdings in Labbe and O'Neill. Labbe requires evidence of actions which are "intentionally or dishonestly misleading." O'Neill and Labbe establish that "arbitrary" means "irrational" in this context.
The undisputed evidence is that the union was faced with a dispute among its members over what non-Waterbury experience would be credited for purposes of the fire lieutenant eligibility test. Certain members advocated a more exacting standard that limited transferable work experience to experience gained in other large Connecticut cities: such as Bridgeport, Hartford and New Haven. (Decision, p. 5-6, Findings of Fact 21 through 28.)
The "factual and legal landscape at the time" included a history of a bitter labor dispute over the issue of credit "for firefighting experience in other towns." (Decision, p. 3, Finding of Fact 7.) The union's acting president and other members of the executive committee without dissent decided to strictly construe the comparability requirement as to service with other departments. (R. Ex. 20.) Though mistaken as to the means which they could use to enforce their understanding of the "St. John Agreement," there is no basis for concluding that such action was "irrational."
The review of the Labor Board's factual findings is governed by the substantial evidence rule. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.) Dolgner v. Alander, 237 Conn. 272, 280
CT Page 5856 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.) Dolgner v.Alander, supra, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The Labor Board's conclusion that the union bylaws mandate that a two thirds vote of a quorum of the executive committee give prior approval is not supported by substantial evidence. The only testimony relating to the issue was from union officers and executive committee members. The testimony was unanimous in that no such requirement existed. The Labor Board's finding that the union witnesses were not credible does not make the converse of the testimony true in the absence of evidence. "[A] trier of fact cannot, from the disbelief of one party's testimony, infer that an opposing party's allegation, unsupported by any evidence, is correct." Builders ServiceCor., Inc. v. Planning Zoning Commission, 208 Conn. 267,293 (1988); Novak v. Anderson, 178 Conn. 506, 508 (1979).
The Labor Board's analysis of the bylaws is set forth at page 15 of its decision:
 The starting point for this analysis is Article IV § 4 of the Union's bylaws, which states that "every member in good standing shall have a right to attend any meeting and to participate in such meeting in accordance with the recognized rules as set forth in the manual of Parliamentary CT Page 5857 Procedure adopted by this Local". In addition, Article VII, § 1 states that "The Executive Board shall consist of seven (7) members. . . . " Section 5 of that Article provides that the Executive Board "will meet upon the call of the President". Section 6 of that Article requires that "[a] two thirds (2/3) majority will be required to have a quorum". Finally, § 8 states that "the Executive Board shall act as a grievance E committee". We believe that a reading of this article compels a conclusion that in order for the Union to decide to file an institutional grievance, a meeting must have been called and that at least five members needed to be present to vote and approve the grievance. The facts in the present case clearly reveal that the Union failed to adhere to its own bylaws in filing the grievance challenging Murchison's and Farrell's appointment to Lieutenant.
Neither these references to the bylaws nor the bylaws themselves make executive committee approval a prerequisite to filing a grievance.
The collective bargaining agreement defines "grievance" as a dispute over the collective bargaining agreement, any law or charter provision, except as excluded by § 7-474(g), conditions affecting health or safety or alleged discrimination. (R. Ex. #2, § 34, p. 11.) The grievance is informally and orally initiated with an immediate supervisor. (Ex 2, § 36, p. 11.) Thus, it does not logically follow that any informal process of orally disputing an extremely broad range of issues would require a formal vote by the executive committee. It is not a reasonable inference from the subordinate facts (provisions of bylaws).
The Labor Board's analysis also fails because there is no evidence of prejudice to the plaintiffs stemming from the executive committee's failure to take a formal vote. Four members of the union filed written grievances over the award of non-Waterbury firefighting credit in relation to the lieutenant's examination. (Decision, p. 5, Finding of Fact 22.) None of the union officers or members, other than complainants, expressed any opinion inconsistent with the position taken by the union. The union at a regular CT Page 5858 executive committee meeting on July 6, 1992, voted unanimously to ratify its action with respect to the fire lieutenant promotion list grievances. (Decision, p. 7, Finding of Fact 37; Ex. 14.) Murchison and Farrell have not explained how they were harmed by the failure of the executive committee to have voted one week earlier. The cases cited by the Labor Board for duty of fair representation violations on the basis of procedural rule violations involved scenarios where the complainants were never allowed to vote and suffered real injury. See Walkerv. Teamster Local 71, 714 F. Sup. 178 (1989), reversed and affirmed in part, 930 F.2d 376 (4th Cir.), cert. denied,50 U.S. 1004 (1991); Livingston v. International Assoc. ofBridge Structural and Ornamental Iron Workers, AFL-CIO,647 F. Sup. 723 (W.D.N.C. 1986). Here, the Labor Board is unable to point to any injury. The substantive decision on the "quantitative and qualitative" issue is not the basis for the conclusion. (See Decision. Conclusions of Law 4) For the procedure to be violative of complainants' rights it would have to have some impact. A one week delay in the vote was meaningless. The union action was unanimously endorsed by all four officers and six of the seven executive committee members on July 6, 1992 (Ex. #27).
The Labor Board's decision references and to some degree relies on "Union's Inconsistent and Discrepant Evidence," (Decision p. 17). The discrepancies noted are immaterial and irrelevant to any issues in the case. There was no dispute that the promotion list came out on June 27, 1992 and the union successfully grieved the credited service issue to the Mayor on June 29, 1992. The Labor Board's focus on who was at what meeting is totally immaterial. The union and city had no secret meeting or understanding. The complainants were not notified until after the grievance resolution. Similarly, whether the grievances were filed in writing on June 27, or June 29, 1992, is of no moment. The grievance complaints could under the contract be orally initiated.
The Labor Board's speculation as to backdating or reusing the docket number of grievance 92G-08 is unsupported by the record and is not a reasonable basis for the Labor Board to "infer a discriminatory motive." The complainants Murchison and Farrell introduced evidence (Ex. #11) which on July 7, 1992 identifies grievance 92G-08. The Fire Chief in CT Page 5859 a letter dated June 27, 1992, references grievance 92G-08 (EX. #7) as does the Mayor of Waterbury on June 29, 1992 (Ex. #19). Attributing significance to the reassignment of grievance 92G-08 on October 1, 1992, is the highest form of speculation.
The Labor Board, in its decision, at page 18, further concludes that the union "created the [June 29, 1992 minutes of an Executive Board meeting] in preparation of the hearings before us." The undisputed testimony supported by numerous items of documentation (Exhs. #53, 54A, 54B, 54C and 55) indicates that the July 29, 1992 executive committee minutes were incorrectly labeled June 29, 1992. Counsel for Murchison and Farrell did not dispute this. (T., December 15, 1994, pp. 791-92)
The existence of a dispute between the union and a few of their members over the value of non-Waterbury firefighting service does not constitute sufficient evidence of a violation of the duty of fair representation.
The appeal is sustained and the case is remanded for a Labor Board order vacating the finding of a violation of the duty of fair representation and the order associated with such finding.
Robert F. McWeeny, J.