# SHERYL BROADNAX ET AL. *v.* CITY OF NEW HAVEN ET AL.
## (SC 17834)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 11—officially released October 23, 2007

*Patricia A. Cofrancesco*, for the appellant (intervening defendant New Haven Firefighters Local 825).

*W. Martyn Philpot, Jr.*, for the appellees (plaintiffs).

*Opinion*

BORDEN, J. This appeal is a sequel to our decision in *Broadnax* v. *New Haven*, 270 Conn. 133, 851 A.2d 1113 (2004) (*Broadnax I*). In *Broadnax I*, we considered the legality, under the city of New Haven's charter, municipal ordinances and civil service rules and regulations, of the practice of "underfilling" in the New Haven fire department.[1] We concluded that underfilling is not permissible under the city's governing laws and regulations, and that the trial court had not abused "its discretion by appointing a special master to oversee promotions within the fire department . . . ." Id., 138. In the present appeal, we consider the intersection of (1) the trial court's powers exercised through the special master to oversee promotions, and (2) the powers of the named defendant, the city of New Haven (city), and the intervening defendant union, New Haven Firefighters Local 825 (union), to settle a grievance pursuant to their collective bargaining agreement by effectuating a promotion. We conclude that when, as in the present case, the grievance settlement at issue had the effect of a promotion, the powers of the court and special master to oversee promotions prevail over the powers of the city and the union to settle a grievance.

The union appeals[2] from the judgment of the trial court, following a report by the special master, embody-

---

[1] For a detailed description of the practice of underfilling, see *Broadnax I*, supra, 270 Conn. 142–43. In short, the term refers to the "practice of using funds allocated for a vacant higher rank to pay individuals employed at a lower rank . . . ." Id., 143.

[2] The union appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The only parties to this appeal are the union and the plaintiff firefighters, namely, Sheryl Broadnax, Ronald Benson, John R. Brantley, Danny Dolphin, Clifton Pettaway and Christopher Texeira. The defendants, namely, the city of New Haven and its fire department, board of fire commissioners and civil service commission, to whom we refer collectively as the city, did not participate in the appeal.

ing a list of orders involving both the specific filling of a fire inspector's position by a firefighter, Marvin Bell, and general orders regarding the process of promotion within the fire department. Specifically, the court ordered as follows: "[I]f the city desires to promote an individual to the position of fire inspector, it shall do so in compliance with the charter requirements and state law, after the examination for the position in compliance with [§ 160 of the New Haven Charter]. The city indicated that . . . Bell is currently 'detailed' to the position of fire inspector.[3] The presence of . . . Bell, or anyone else in that position shall only be in compliance with the provisions of the charter regarding temporary assignment. The special master shall oversee the balance of the process for promotion of an individual to fire inspector. As the special master deems necessary, he may hold further hearings to determine the propriety of the initial promotion of . . . Bell and the current validity, under the charter and civil service rules, of any list from which . . . Bell was originally promoted. After reviewing the conduct of the city . . . the court cautions that no party to this action is to take unilateral action for promotion of sworn personnel, but submit prospectively, not retrospectively, to the review by the special master." The union claims that, because Bell's promotion resulted from a settlement of a collective bargaining grievance, the court improperly refused to approve that promotion. We affirm the judgment of the trial court.[4]

[3] The court explained that Bell had not been permanently "filled to the job but [had been] detailed to the position until court order."

[4] In light of the fact that other proceedings may affect Bell's right to the promotion, prior to oral argument before this court in this matter, we notified the parties to be prepared to address at oral argument any questions the court may have as to why the appeal should not be dismissed for lack of a final judgment. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). We conclude that the court's judgment is final for purposes of appeal. Although further proceedings may affect Bell's rights to the promotion, we focus in this appeal on the union's asserted right as the appellant. It is undisputed that, although Bell is a member of the bargaining unit under the

The record reveals the following facts and procedural history. On January 21, 2005, the city requested that the special master approve the placement of Bell in the position of fire inspector in the city fire department. The special master held a hearing on this request, and found the following facts, none of which the union disputes.

Prior to July 1, 2003, Bell was a fire inspector. On that date, however, his position was eliminated as part of a reduction in force, and he returned to his prior position as a firefighter. In December, 2004, an opening for a position of fire inspector became available due to a retirement. The union filed a grievance seeking to place Bell in that newly vacant position of fire inspector. On January 11, 2005, without notice to the special master, the city and the union entered into a settlement of the grievance placing Bell in that position, effective January 3, 2005.

The special master also found that the placement of Bell into the position of fire inspector was a promotion and, therefore, fell within the scope of the trial court's prior order appointing the special master to oversee all promotions in the fire department. This finding was based on the facts that: upon the placement, Bell would receive an immediate and substantial raise in pay; Bell would work a preferred schedule of 8 a.m. to 4 p.m., rather than a firefighter's rotational schedule of days on, days off and night shifts; under the city charter the board of fire commissioners places persons into that

collective bargaining agreement, the parties to the agreement are the union and the city. The union has made a colorable claim that its present right to settle grievances under the collective bargaining agreement between it and the city has been abrogated and that, therefore, the trial court's refusal to approve Bell's promotion pursuant to the settlement of the union's grievance so precludes its rights under the collective bargaining agreement that any further proceedings cannot affect those rights. Under *Curcio* and its progeny, that is sufficient finality for purposes of appeal. See *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 812, 917 A.2d 951 (2007).

position; and both the plaintiffs and the union claimed that elevation from firefighter to fire inspector is a promotion.

The special master then turned to the question of whether he should approve the promotion. He declined to do so because, although Bell had held the position previously and was qualified to perform its duties, he was not promoted from a current, valid civil service list, no test was given for the December, 2004 opening, and Bell was not on any recall list.[5] The special master rejected the union's position that the grievance settlement trumped the court's previous order requiring judicial oversight and approval of all promotions in the fire department. Accordingly, the special master recommended to the court that it not approve the promotion of Bell to the position of fire inspector.

The court adopted the facts found by the special master, and agreed with his recommendation that Bell's promotion be disapproved. The court noted that it was undisputed that the filling of a fire inspector's position was not made in accordance with the procedure outlined in the city's civil service rules. Those rules require that an opening in the position of fire inspector be filled from a valid recall list or, in the absence of such a list, from a promotional examination.[6] The union contended

---

[5] When Bell was returned to the position of firefighter from the position of fire inspector on July 1, 2003, as a result of the elimination of the fire inspector position, he was not put on a recall list. The city conceded that, despite the requirements of the civil service rules, no such recall list existed.

[6] It is not necessary to repeat here all of the civil service requirements for promotions in the fire department. Suffice it to say that, in general terms, individuals seeking promotion must take an examination, the results of which are "rank order[ed]," i.e., the highest score is listed first, followed by others in descending examination score. *Broadnax I*, supra, 270 Conn. 140. That examination yields an eligibility list. When a vacancy opens, individuals are promoted from the eligibility list on the basis of their scores. Id. An eligibility list lasts for two years, after which a new examination must be conducted and a new eligibility list is certified. Id., 141. The trial court also noted that, although Bell originally had been appointed to the position of fire inspector from a list of qualified candidates, the record did not disclose whether that list met other statutory and civil service rule requirements.

that the provisions of the city charter and civil service regulations, as well as the court's order providing that all promotions be overseen by the special master, must yield to the grievance settlement pursuant to the Municipal Employees Relations Act (act), General Statutes § 7-460 et seq.[7]

The court rejected this contention. It determined that "the court orders have been put in place to ensure that the fire department, plagued with violations of law and charter in their promotional practices for over [twenty] years, comply with the law to instill public and employee confidence in the process. . . . The promotion contemplated is to a position that should be subject to civil service examination as a classified position. The only testing that the city historically engaged in for this position is a personal interview. If the position were tested for there would be a list of qualified candidates for the tenure of the list. If a person were laid off or otherwise removed from the position by virtue of what the city calls a 'reduction in force,' then a list of the individuals so situated for the time of the validity of the list would be in place and pursuant to the collective bargaining agreement as well as the charter provisions, the candidate to be promoted would be selected . . . . Instead, the procedure contemplated by the union and the city is informal, not in compliance with the transparent requirements of the civil service law, and therefore subject to manipulation, undermining the public confidence in the promotional practice." Accordingly, the court entered the orders previously mentioned. This appeal followed.

It is undisputed that Bell's placement in the position of fire inspector constituted a promotion. It is also

---

[7] The union also argued that the civil service rules and regulations did not apply in this case because: (1) Bell's placement did not constitute a promotion; and (2) the position of fire inspector is an unclassified position under the charter and, therefore, exempt from the civil service rules. The court rejected these positions, and the union does not renew them on appeal.

undisputed that under the act, the union is the exclusive bargaining agent for the members of the fire department and that Bell's placement in that position was effected by a settlement of a grievance by the union under its collective bargaining agreement with the city. The union's sole contention is that, pursuant to General Statutes § 7-474 (f)[8] of the act, the union's settlement of the grievance in accordance with the terms of the collective bargaining agreement prevails over any conflicting civil service rules and the court's orders implementing those rules. We disagree.

This contention poses a question of statutory interpretation. Thus, our scope of review is plenary. *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995).

It is true that § 7-474 (f) provides that, in general, when there is a conflict between a collective bargaining agreement and civil service rules, the collective bargaining agreement prevails. That is true, however, only regarding "matters appropriate to collective bargaining . . . ." General Statutes § 7-474 (f); see footnote 8 of

---

[8] General Statutes § 7-474 (f) provides: "Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen, or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the Policemen and Firemen Survivors' Benefit Fund, the terms of such agreement shall prevail; provided, if participation of any employees in said system or said fund is effected by such agreement, the effective date of participation in said system or said fund, notwithstanding any contrary provision in such agreement, shall be the first day of the third month following the month in which a certified copy of such agreement is received by the Retirement Commission, or such later date as may be specified in the agreement."

this opinion. We conclude that the promotion of Bell to the position of fire inspector pursuant to the grievance settlement was not a matter "appropriate to collective bargaining" within the meaning of § 7-474 (f).

The meaning of the relevant terms of § 7-474 (f) becomes apparent when we view them, as we must, under our established rules of statutory construction, in context with the statutory scheme of which they are a part. See *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 580–81, 887 A.2d 848, cert. denied, 549 U.S. 815, 127 S. Ct. 347, 166 L. Ed. 2d 26 (2006); see also *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 415–16, 908 A.2d 1033 (2006). Section 7-474 (g)[9] provides in relevant part: "Nothing herein shall diminish the authority and power of any municipal civil service [agency] . . . to conduct and grade merit examinations and to rate candidates in the order of their relative excellence from which appointments *or promotions* may be made . . . . The conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from

___

[9] General Statutes § 7-474 (g) provides: "Nothing herein shall diminish the authority and power of any municipal civil service commission, personnel board, personnel agency or its agents established by statute, charter or special act to conduct and grade merit examinations and to rate candidates in the order of their relative excellence from which appointments or promotions may be made to positions in the competitive division of the classified service of the municipal employer served by such civil service commission or personnel board. The conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from such examinations and the initial appointments from such lists and any provision of any municipal charter concerning political activity of municipal employees shall not be subject to collective bargaining, provided once the procedures for the promotional process have been established by the municipality, any changes to the process proposed by the municipality concerning the following issues shall be subject to collective bargaining: (1) The necessary qualifications for taking a promotional examination; (2) the relative weight to be attached to each method of examination; and (3) the use and determination of monitors for written, oral and performance examinations. In no event shall the content of any promotional examination be subject to collective bargaining."

such examinations . . . shall not be subject to collective bargaining, provided once the procedures for the promotional process have been established by the municipality, any changes to the process proposed by the municipality concerning the following issues shall be subject to collective bargaining: (1) The necessary qualifications for taking a promotional examination; (2) the relative weight to be attached to each method of examination; and (3) the use and determination of monitors for written, oral and performance examinations. In no event shall the content of any promotional examination be subject to collective bargaining." (Emphasis added.) The language, "[n]othing herein," contained in subdivision (g) includes all of the other provisions of § 7-474, and therefore includes subsection (f). Thus, if Bell's promotion in the present case comes within the confines of § 7-474 (g), it is exempted from the scope of collective bargaining under § 7-474 (f).

We considered a similar question in *Murchison* v. *Civil Service Commission*, 234 Conn. 35, 660 A.2d 850 (1995). The question in that case was "whether, pursuant to . . . § 7-474 (g), a dispute regarding the eligibility of Waterbury firefighters for promotion to the position of fire lieutenant is subject to the grievance procedure of the collective bargaining agreement between the city of Waterbury and the firefighters union." Id., 37. The union had submitted a grievance regarding the qualifications for taking a promotional examination for the position of fire lieutenant, and the mayor and personnel director had sustained the grievance. Id., 38–40. We concluded, however, that the matter was not subject to the grievance procedure. Id., 37.

In doing so, we read § 7-474 (g) broadly. We first determined that, as originally enacted, § 7-474 (g) "exempted from collective bargaining, without exception, all matters pertaining to the conduct and the grading of merit examinations and the subsequent rating of

candidates." Id., 45. We then noted that, in 1982, the legislature had amended § 7-474 (g); Public Acts 1982, No. 82-212, § 1 (P.A. 82-212); by adopting "an exception for proposed *changes* to the necessary qualifications for taking a promotional examination . . . ." (Emphasis in original.) *Murchison* v. *Civil Service Commission*, supra, 234 Conn. 45. We then "conclude[d] that the method of determining the necessary qualifications for taking the examination that was in effect when P.A. 82-212 was adopted is implicitly within the scope of the conduct of the examination and is not subject to collective bargaining." Id., 45–46. Thus, despite the fact that the language of § 7-474 (g) referred only to the "conduct" of the promotional examination, we concluded that it covered the qualifications for taking the examination. Id., 48.

We reached this conclusion, in part, in reliance on the legislative history of the 1982 amendment. That history disclosed that § 7-474 (g) "was generally intended to exempt the entire promotional examination process from collective bargaining and that the exceptions should be strictly construed." Id., 46. The history also disclosed two competing arguments regarding the proposal. The municipalities opposed the proposal because they feared that requiring any part of the promotional examination process to be collectively bargained would diminish the authority of their civil service agencies; the unions argued, however, that municipalities had abused the process by making unilateral changes in promotional policy to favor certain individuals. Id. The legislative solution was for § 7-474 (g) to "[provide] municipalities with the right to establish the promotional examination process of their choice without being subject to collective bargaining but [to require] collective bargaining for 'changes to the process' regarding the qualifications for an examination." Id., 47.

Our conclusion in *Murchison* was consistent with that of the Appellate Court in an earlier case. In *D'Agostino* v. *New Britain*, 7 Conn. App. 105, 109–10, 507 A.2d 1042, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986), that court held that a grievance procedure under a collective bargaining agreement, involving a promotion to the position of lieutenant in the fire department, was not a matter appropriate for collective bargaining because it was governed by § 7-474 (g).

Thus, *Murchison* teaches that the principal purpose of § 7-474 (g), as amended in 1982, is to preserve to the municipality's civil service provisions the realm of the promotional examination process, subject to the limited exception of the collective bargaining process for the identified proposed changes in that process. In the absence of such a proposed change, the entire realm of the promotional examination process remains within the authority of the municipality's civil service provisions and outside of the collective bargaining process.

Our reasoning in *Murchison* guides us in the present case. We held in *Murchison* that the determination of the qualifications for taking a fire department promotional examination is not a proper subject of a grievance determined under a collective bargaining agreement and is, instead, within the process of conducting merit promotional examinations under § 7-474 (g). *Murchison* v. *Civil Service Commission*, supra, 234 Conn. 48. It would be incongruous to conclude, as the union's argument suggests in the present case, that nonetheless the union and the city can bypass completely the entire civil service promotional examination process itself by settling a collective bargaining grievance that effectuates a promotion. This is particularly true in the present case, in which, as the trial court determined, the fire department has been plagued with violations of law for more than twenty years in its promotional practices. See *Broadnax I*, supra, 270 Conn. 139–40 (setting forth

historical practices). To so conclude would be inconsistent with the principal purpose of § 7-474 (g), namely, to commit the realm of the promotional examination process to the municipal civil service provisions and exempt that process from collective bargaining, except where there are certain proposed changes to that process. In effect, it would permit the union and the city to undermine the principal purpose of § 7-474 (g) by substituting, in the absence of any proposed change in the promotional examination process, a grievance settlement for the process of promotion by merit examination. This would, in turn, impermissibly expand the scope of the limited exception contained within § 7-474 (g) confining the collective bargaining process to certain changes in the promotional examination process, because it would render a proposed change in the promotional examination process, which *is* subject to collective bargaining, the equivalent of the complete elimination of that process. In enacting § 7-474 (g), the legislature could not have intended such an incongruous result.

We therefore decline to construe § 7-474 (g) in such an inconsistent and incongruous fashion. Instead, we construe that section in accordance with "the overriding principle that statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law. See, e.g., *Doe* v. *Doe*, 244 Conn. 403, 428, 710 A.2d 1297 (1998) (we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions); *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992) ([s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law)." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002). It would be inconsistent with that principle to conclude that the union and the city may not bargain regarding

the setting of requirements for taking a promotional examination because the setting of those requirements is exempt from collective bargaining under § 7-474 (g), but that they nonetheless completely may avoid the civil service requirements for promotions by engaging in a collective bargaining procedure, namely, settling a grievance that results in a promotion. Instead, it renders the statutory scheme rational, coherent and consistent to conclude, as we do, that, in the absence of a proposed change in the promotional examination process, a grievance settlement that results in a promotion must be considered as part of the promotional examination process under § 7-474 (g) and, therefore, is not a matter "appropriate to collective bargaining" under § 7-474 (f).

In the present case, there was no proposed change in the promotional examination process. Indeed, the union does not contend that there was any such change. Accordingly, the grievance settlement that resulted in Bell's promotion did not trump the trial court's power to oversee all promotions in the fire department.

The judgment is affirmed.

In this opinion the other justices concurred.