******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY T. CONNOR
(SC 19421)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Robinson and
Vertefeuille, Js.

*Argued January 26—officially released May 17, 2016*

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne Mahoney* and *Denise B. Smoker*, senior assistant state's attorneys, for the appellant (state).

*Mary Boehlert*, assigned counsel, for the appellee (defendant).

*Opinion*

McDONALD, J. In *State* v. *Connor*, 292 Conn. 483, 487, 533, 973 A.2d 627 (2009), this court remanded the criminal case of the defendant, Jeffrey T. Connor, to the trial court with direction to reconsider the defendant's competency to represent himself in light of a new standard that this court adopted in the defendant's direct appeal. Following that remand, the trial court concluded that the defendant had been competent to represent himself, and the defendant challenged that decision before the Appellate Court as an abuse of discretion. See *State* v. *Connor*, 152 Conn. App. 780, 100 A.3d 877 (2014). The dispositive issue in the state's certified appeal is whether the Appellate Court properly reversed the trial court's judgment on the ground that the remand hearing was procedurally flawed. The state contends that the Appellate Court raised this issue sua sponte in derogation of *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162–64, 84 A.3d 840 (2014) (*Blumberg*). We agree and, accordingly, reverse the judgment of the Appellate Court and remand the case to that court with direction to consider the issue raised in the defendant's appeal.

The record reveals the following undisputed facts and procedural history. The defendant was charged with a number of crimes[1] in connection with the abduction of his former wife. *State* v. *Connor*, supra, 292 Conn. 486, 488. The extensive pretrial proceedings reflected repeated attempts by the trial court to ascertain the defendant's competency both to stand trial and to discharge his court-appointed counsel and represent himself. Id., 489. The defendant's competency had been called into doubt due to the fact that he had suffered a debilitating stroke and exhibited signs of mental illness. Id., 490–91. The efficacy of these proceedings was complicated by the defendant's refusal to cooperate with the medical professionals tasked with evaluating him and his intermittent unresponsiveness in court. Id., 491–92, 497. In reliance on the opinion of several medical professionals, the trial court, *McMahon, J.*, concluded that the defendant's refusal to cooperate was " 'volitional' "; id., 495; and the trial court, *Miano, J.*, thereafter concluded that the defendant was "malingering," and found him competent to stand trial. Id., 499.

The defendant's case proceeded to trial before Judge Espinosa,[2] who similarly concluded that the defendant's unresponsiveness during jury selection reflected his continued " 'malingering.' " Id., 500–501. The defendant explained that he had previously refused to cooperate because he did not want his appointed counsel to represent him, and requested that he be permitted to represent himself. Id., 501. After defense counsel summarized the history of the case with respect to the defendant's competency and desire to represent himself, Judge Espinosa canvassed the defendant, asking him ques-

tions about, inter alia, his educational background and his ability to recall information pertinent to his case. Id., 501–502. Judge Espinosa ultimately concluded that the defendant was "competent to represent himself. He is articulate, he's lucid, he knows what he's doing. He . . . devised a calculated plan to disrupt the trial in front of Judge Miano because he wasn't getting his way with his lawyer . . . ." (Internal quotation marks omitted.) Id., 503. Judge Espinosa therefore permitted the defendant to represent himself, but appointed his defense counsel as standby counsel. Id. A jury convicted the defendant on all but one of the charges against him. Id., 504.

The defendant directly appealed the judgment of conviction to this court claiming, inter alia, that Judge Espinosa had improperly found that he was competent to represent himself. Id., 505. At the time of the defendant's trial, our courts were bound by federal case law that had indicated that "a [criminal] defendant who has been found competent to stand trial as a matter of state law . . . also is competent to waive the right to counsel. Application of a stricter competency test in the latter analysis than was used in the former would place an unconstitutional burden in the exercise of the defendant's federal constitutional right of self-representation." *State* v. *Day*, 233 Conn. 813, 825, 661 A.2d 539 (1995), overruled in part by *State* v. *Connor*, 292 Conn. 483, 528 n.29, 973 A.2d 627 (2009). While the defendant's appeal was pending, however, the United States Supreme Court clarified that individual states may adopt standards for determining whether a defendant is competent to represent himself that are more demanding than the standard used for determining whether a defendant is competent to stand trial. See *Indiana* v. *Edwards*, 554 U.S. 164, 177–78, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). Accordingly, although a more stringent standard was not constitutionally mandated, this court elected to adopt such a standard in the defendant's appeal pursuant to the exercise of our supervisory authority. *State* v. *Connor*, supra, 292 Conn. 528 n.28. Under this standard, when a trial court is presented with a mentally ill or mentally incapacitated defendant who has been found competent to stand trial; id., 527; a defendant's competency to represent himself would depend "on his ability to carry out the basic tasks needed to present his own defense without the help of counsel . . . notwithstanding any mental incapacity or impairment serious enough to call that ability into question." (Citation omitted; internal quotation marks omitted.) Id., 530.

The court noted, however, that "[b]ecause *Edwards* had not been decided prior to the conclusion of the trial in the present case, Judge Espinosa had no alternative, in light of our holding in *State* v. *Day*, supra, 233 Conn. 825, but to permit the defendant to represent himself once it was determined that he was competent

to stand trial. We therefore do not know whether Judge Espinosa would have granted the defendant's request to represent himself if she had had the authority to deny the request in accordance with *Edwards* and our holding in the present case. Consequently, the case must be remanded for a determination by the court, *Espinosa, J.*, as to whether the defendant then was competent, notwithstanding any mental disability, to conduct the trial proceedings by himself. In making this determination, the trial court, which . . . is 'best able to make [such a] fine-tuned mental capacity [decision], tailored to the individualized circumstances of a particular defendant'; *Indiana* v. *Edwards*, supra, 554 U.S. 177; should consider any and all relevant information, including, but not limited to, the extent to which the defendant's competence to represent himself may have been affected by mental illness, by the stroke that he had suffered, and by any memory problems that he may have experienced as a result of that stroke. The court also should evaluate the extent to which the defendant may have been feigning mental problems. Because of the defendant's refusal to cooperate with the various evaluation teams that had been assembled to assess his competency, it is difficult to discern whether the defendant suffered from a mental illness that, alone or in combination with his stroke, may have rendered him incompetent to represent himself. Accordingly, the trial court may seek to have the defendant examined again if it appears that such an examination would be helpful in resolving the issue presented on remand." (Footnotes omitted.) *State* v. *Connor*, supra, 292 Conn. 528–29. The court noted that, if the trial court elected to do an evaluation and the defendant persisted in refusing to cooperate, "the trial court would have no choice but to make a determination concerning the defendant's competency to represent himself at the trial that is limited generally to its recollection of the proceedings and its review of the trial transcript and arguments of counsel." Id., 529 n.31.

In early 2011, Judge Espinosa began the remand proceedings, but was elevated to the Appellate Court before they could be completed. See footnote 2 of this opinion. In September, 2011, Judge Schuman assumed responsibility for the remand proceedings. In January, 2012, Judge Espinosa executed an affidavit based on her recollections of the defendant's trial. Judge Espinosa's affidavit stated, inter alia, that the defendant had "appeared to be engaged in every aspect" of his trial, had "demonstrated an understanding of the evidence presented," and had "carried out the basic tasks needed to present his own defense in a manner similar to other self-represented" parties that had appeared before her. She acknowledged that the defendant had made certain "irrelevant" statements, but opined that they appeared to be calculated attempts to elicit sympathy from the jury. Judge Espinosa further attested that the defendant

had "demonstrated that he was sufficiently capable of carrying out the basic tasks needed to present his own defense without the assistance of counsel."

Judge Schuman subsequently held two hearings. At the first hearing, Judge Schuman outlined his plan to make a determination regarding the defendant's competency to represent himself on the basis of the trial transcripts, Judge Espinosa's affidavit,[3] and oral argument from the parties. At the end of the hearing, Judge Schuman appointed counsel for the defendant because he was unresponsive. At the second hearing, the court granted defense counsel's request to admit the defendant's medical records from the Department of Correction. At no point did anyone object to Judge Schuman conducting the proceedings or to the procedure proposed by Judge Schuman to make the competency determination.[4]

Judge Schuman thereafter issued a memorandum of decision in which he determined that the defendant had been competent to represent himself at the time of his trial. Judge Schuman first set forth a summary of the defendant's conduct during trial, gleaned from the trial transcripts. He then turned to the defendant's medical records and explained why he had declined to give them any weight. He noted that the medical professionals who had formed opinions about the defendant's competency to stand trial had not observed the defendant at trial and would not be helpful in assessing the legal question of whether the defendant could adequately represent himself despite any mental impairment. Finally, he set forth Judge Espinosa's observations, as reflected in her affidavit. In his analysis, Judge Schuman acknowledged that the transcripts had revealed some troubling issues regarding the defendant's ability to represent himself. Nonetheless, he concluded that the most serious charges against the defendant were not readily defensible and noted Judge Espinosa's opinion that some of the defendant's actions may have been attempts to gain sympathy from the jury. In conclusion, Judge Schuman noted: "Judge Espinosa has made the critical finding that the defendant, while lacking technical proficiency, could perform the basic tasks needed to defend himself without the assistance of counsel. That finding establishes that the defendant's performance has met the ultimate standard that applies in this context. . . . The court must give considerable deference to this finding because Judge Espinosa heard the trial. Reading the transcript is no substitute for the opportunity, which only Judge Espinosa had, to observe whether the defendant had a reasonable understanding of how the trial process worked, to assess whether his occasional unorthodoxy represented fumbling ineptitude or wilful strategy, and to measure just how well the defendant interacted with the jury. Based largely on Judge Espinosa's first hand assessment of the defendant's performance, the court concludes that the defendant was

competent to represent himself at trial." (Citation omitted.)

The defendant appealed to the Appellate Court from the judgment, claiming in his brief to that court that "the trial court abused its discretion when it erroneously concluded that the [defendant] was competent to represent himself at trial despite his mental illness or mental incapacity." Specifically, the defendant argued "that the evidence in this case . . . presents a substantial basis for the [trial court] to have found that [the defendant] was incompetent to represent himself at trial." In support of that claim, the defendant cited the behavior and diagnoses documented in his medical records, the fact that his competency had been questioned on numerous occasions prior to trial, and his behavior at trial evidenced in the trial transcripts. In its brief, the state responded by contending that the evidence, particularly Judge Espinosa's affidavit, established that the trial court properly concluded that the defendant was competent to represent himself.

The Appellate Court reversed the trial court's judgment, concluding that the trial court "did not conduct a meaningful hearing to evaluate retrospectively the competency of the defendant. Indeed, the indeterminate state of the record precluded the court from retrospectively determining the defendant's competency with the degree of reliability that would have accompanied a competency determination contemporaneous with the defendant's trial." *State* v. *Connor*, supra, 152 Conn. App. 795–96. The court further determined that, because "of the unorthodox sequence of events on remand" and the fact that eight years had passed since the defendant's trial, a "procedurally adequate competency determination" was "no longer possible" because it "would be unduly and impermissibly speculative"; id., 810–11; and the defendant was entitled to a new trial.[5] Id., 817.

The state thereafter filed a motion for reconsideration or reargument en banc, claiming that the Appellate Court had violated *Blumberg* by raising sua sponte the issue of whether the defendant had received a meaningful hearing. The Appellate Court denied the state's motion.

We then granted the state's petition for certification to appeal to this court, limited to the following issues: (1) "Did the Appellate Court properly consider whether the trial court's remand hearing was procedurally flawed?"; and (2) "If the answer to the first question is in the affirmative, did the Appellate Court properly conclude that the defendant's convictions must be vacated?" *State* v. *Connor*, 315 Conn. 903, 903–904, 104 A.3d 757 (2014). With respect to the first question, the state claims that the defendant never raised, and therefore waived, any claim that the remand proceedings were procedurally flawed, and, accordingly, the Appel-

late Court's decision to resolve the appeal sua sponte on this basis violated *Blumberg*. The defendant contends that the Appellate Court properly decided the appeal on the basis of issues raised by the parties, but argues that, even if the Appellate Court raised the procedural issue sua sponte, doing so was proper under *Blumberg*. We agree with the state's argument on the first certified question, and therefore need not reach the second certified question.

Our appellate courts generally do not consider issues that were not raised by the parties. *Blumberg*, supra, 311 Conn. 164. This is because "our system is an adversarial one in which the burden ordinarily is on the parties to frame the issues . . . ." Id. There are, however, well established exceptions to this rule. In *Blumberg*, we surveyed our case law in which we have made such exceptions and categorized the circumstances under which reviewing courts properly may raise and decide unpreserved issues. Id., 161–64. We noted that an appellate court has discretion to raise an unpreserved issue if three conditions are met: (1) exceptional circumstances exist; (2) the parties have been afforded an opportunity to be heard on the issue; and (3) there is no unfair prejudice to the party against whom the issue is to be decided. Id., 128.

Before turning to the question of whether those conditions were satisfied in the present case, we must determine whether the defendant asserted a claim that the remand proceedings were procedurally flawed or whether the Appellate Court raised this issue sua sponte. Although we apply the abuse of discretion standard to the question of whether the Appellate Court properly determined that the *Blumberg* conditions were satisfied; id., 167–68; this threshold waiver question is subject to plenary review. See *State* v. *Davis*, 311 Conn. 468, 477, 88 A.3d 445 (2014); *State* v. *Commins*, 276 Conn. 503, 510, 886 A.2d 824 (2005), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 754, 91 A.3d 862 (2014); cf. *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 299, 94 A.3d 553 (2014) (interpretation of pleadings subject to plenary review). We conclude that the defendant did not raise the issue on which the appeal was decided, and, therefore, the Appellate Court raised it sua sponte.

The record reveals the following additional facts and procedural history relevant to our resolution of this issue. The remand hearing proceeded before Judge Schuman without the defendant or his counsel interposing any objections. Other than his medical records, admitted over the state's objection, the defendant did not attempt to introduce any new documentary evidence or witness testimony. Defense counsel acknowledged that they had sought out mental health professionals to evaluate the trial transcripts, but those professionals had indicated that they would be unable

to render any kind of a significant opinion on that basis. The defendant never sought to have Judge Espinosa testify, nor did he argue that her affidavit was lacking in any way. Indeed, defense counsel argued before Judge Schuman "that we have before us the affidavit of Judge Espinosa, on one hand, and the transcripts on the other, and in between are medical records from the Department of Correction, which I would suggest to the court . . . would put to rest the idea . . . whether or not [the defendant] was, at the time, suffering from any mental illness." At the close of the hearings, in response to the state's reliance on Judge Espinosa's affidavit, defense counsel stated: "I suppose the simplest thing for the court to do here, because [the case] was remanded specifically to Judge Espinosa for a finding, is to just . . . accept her affidavit at face value and move on." Nonetheless, defense counsel noted that he disagreed with the conclusions that Judge Espinosa had drawn from the conduct displayed by the defendant. When Judge Schuman later asked how much deference he should give to the affidavit, defense counsel stated: "I am under no illusion that you won't give deference at all; as I said, I disagree with it. I disagree with it heartily, but she was the judge and it was returned to her for her opinion."

Following Judge Schuman's decision, the defendant claimed in his brief to the Appellate Court that "the trial court abused its discretion when it erroneously concluded that the [defendant] was competent to represent himself at trial despite his mental illness or mental incapacity." In support of that claim, the defendant argued "that the evidence in this case . . . presents a substantial basis for the [trial court] to have found that [the defendant] was incompetent to represent himself at trial." The defendant cited the information documented in his medical records, the fact that his competency had been questioned on numerous occasions prior to trial, and his behavior at trial as evidenced by the trial transcripts. The defendant argued that the evidence in his case was comparable to that in *Indiana* v. *Edwards*, supra, 554 U.S. 177–78, wherein the trial court had concluded that the defendant was not competent to represent himself despite his competency to stand trial. In the present case, the defendant's analysis of his claim made no reference to Judge Espinosa's affidavit; he simply acknowledged its filing and conclusion in his preliminary statement of the facts and procedural history of the case. The state's responsive brief contended that the evidence, particularly Judge Espinosa's affidavit, established that the trial court properly concluded that the defendant was competent to represent himself.

In its opinion, the Appellate Court initially broadly framed the issue before it as whether the trial court "improperly determined that [the defendant] was competent to represent himself . . . ." *State* v. *Connor*,

supra, 152 Conn. App. 795. The Appellate Court then noted that, although such determinations ordinarily would be made at a time substantially contemporaneous with a mentally ill or incapacitated defendant's request for self-representation, that did not happen in the present case. The Appellate Court noted that retrospective (or nunc pro tunc)[6] competency determinations are generally disfavored and only permissible when they are the product of a meaningful hearing. Id., 801. The Appellate Court further explained: "In the present case, by way of remanding the matter to the trial court with direction to render a nunc pro tunc competency determination, our Supreme Court implicitly determined that it was permissible for the trial court to render such a determination at that time. The implied permissibility of the nunc pro tunc competency determination, however, was predicated on the assumption that Judge Espinosa would conduct the remand proceedings, as was plainly set forth in our Supreme Court's mandate to the trial court. . . . Judge Espinosa, however, did not conduct the remand proceedings. . . . Our Supreme Court's mandate to the trial court did not account for such a contingency and, consequently, in order to resolve the defendant's claim on appeal that the competency determination was improper, we must examine the basis of and grounds of Judge Schuman's determination that the defendant was competent to represent himself . . . ." (Citations omitted; footnotes omitted.) Id., 802–804.

The court noted that, although this court had assumed that Judge Espinosa's determination would require the exercise of discretion, Judge Schuman did not, under the circumstances, make the discretionary determination that this court had sought from Judge Espinosa. Id., 803 n.21. The court reasoned that "[b]ecause the judges of our Superior Court do not have a collective consciousness, Judge Schuman's conclusion as to what Judge Espinosa would have done in a circumstance that she never contemplated would not have been an exercise of discretion, but a legal fiction."[7] Id.

In considering whether Judge Schuman had conducted a "meaningful," and therefore permissible, retrospective competency hearing, the Appellate Court defined a meaningful hearing as one in which "the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original . . . proceedings." (Internal quotation marks omitted.) Id., 804. The Appellate Court explained that the "primary object" of its inquiry into whether the defendant had received a meaningful hearing was "to determine whether the quantity and quality of the evidence would have permitted the court on remand to reliably reconstruct the defendant's competency at the time of trial." Id., 805.

The Appellate Court then proceeded to analyze whether the remand hearing had been meaningful by applying a four factor test often used by federal courts to determine whether a nunc pro tunc hearing to determine a defendant's competency to stand trial is meaningful. Id., 804–805. Specifically, the Appellate Court considered: (1) the amount of time that had elapsed between the defendant's trial and the competency determination; (2) the availability of medical evidence that was contemporaneous with the trial; (3) statements by the defendant in the trial record; and (4) the availability of individuals who were in a position to interact with the defendant before and during trial. Id. Applying this test, the court first noted that the competency determination occurred approximately six years after trial. Id., 805. The court then effectively determined that the defendant's medical records were not reliable evidence as to his competency to represent himself because they were from a time period preceding his trial, they included many illegible entries, and they contained other entries using medical terminology that could not be understood without the aid of expert testimony.[8] Id., 805–806. The court next determined that the defendant's statements at trial were "of minimal utility without a proper understanding of [the defendant's] mental state at that time," which it concluded could not have been accurately assessed given the state of the contemporaneous medical evidence that was available to the court. Id., 806–807. Insofar as some of the defendant's statements seemed to indicate that he may have been competent to represent himself, the Appellate Court reasoned that those statements could have been the product of mental illness. Id., 807. Finally, the Appellate Court determined that, although Judge Espinosa had observed the defendant during the relevant time, her "live testimony would have been necessary insofar as her affidavit set forth what we can characterize only as conclusory statements regarding the defendant's ability to represent himself during trial . . . ." Id. The court noted that Judge Espinosa's affidavit had been made without knowledge of the defendant's subsequently admitted medical records and that her ultimate opinion conflicted with her statements at trial regarding the defendant's competency.[9] Id., 808–809. In balancing these factors, the Appellate Court ultimately concluded that the trial court had not conducted a meaningful hearing. Id., 809–10.

From our review of this record, it is apparent that, although the Appellate Court's initial framing of the issue—whether the trial court "improperly determined that [the defendant] was competent to represent himself"—was consistent with the parties' dispute at its broadest level; id., 795; its decision was based on an issue that was not raised by the parties. The defendant challenged the substantive basis of Judge Schuman's decision, claiming that certain evidence proved that he

was not competent to represent himself. By contrast, the Appellate Court decided whether, in light of the fact that Judge Espinosa had not presided over the remand proceedings, any other trier of fact could have made a determination regarding the defendant's competency given the substantial amount of time that had passed and the state of the record. The Appellate Court effectively concluded that, although this court had approved the making of a competency determination on the basis of a review of the trial transcripts, oral argument of the parties, and Judge Espinosa's personal observations, those same considerations constituted an inadequate basis to afford the defendant a meaningful competency hearing.

The defendant never questioned Judge Schuman's ability to make a competency determination, whether because a significant amount of time had elapsed since the defendant's trial or because Judge Schuman had not presided over that trial. The defendant never claimed, either before the Appellate Court or the trial court, that the evidence was insufficient or unreliable such that Judge Schuman *could not* make a determination regarding his competency. Indeed, the defendant conceded that Judge Schuman properly could afford substantial deference to Judge Espinosa's conclusions in her affidavit, arguing only that the court should find the evidence contained in the defendant's medical records a more compelling basis to reach a contrary conclusion. The defendant did not, nor could he claim, that Judge Schuman improperly precluded him from introducing evidence relevant to his competency. Therefore, any such claims would have been waived by the defendant.

In other words, the parties focused exclusively on whether the trial court properly determined that the defendant was competent to represent himself on the basis of the evidence properly before it, whereas the Appellate Court analyzed as a threshold matter whether the circumstances and evidence allowed the trial court to make any competency determination at all.[10] Although the Appellate Court considered the evidence that the parties cited, it did so through the lens of whether the evidence provided the defendant with a meaningful hearing, not whether the trial court made a proper determination on the basis of that evidence. Indeed, the Appellate Court weighed this evidence against the passage of time, a consideration that neither party raised at any stage of the proceedings. We therefore are compelled to conclude that the Appellate Court decided the appeal on the basis of an issue that it raised sua sponte.

In light of this conclusion, we turn to the question of whether the requirements for raising an unpreserved issue sua sponte were satisfied. As previously noted, we review the Appellate Court's decision as to this matter for an abuse of discretion. *Blumberg*, supra, 311

Conn. 167–68. Although the state contends that none of the *Blumberg* requirements was satisfied, we focus on two of them: (1) whether the parties were given an opportunity to be heard on the issue; and (2) whether there was unfair prejudice to the state, the party against whom the issue was decided. Id., 128.

With respect to the opportunity to be heard, the record reveals the following relevant facts. Prior to oral argument, the Appellate Court did not order the parties to file supplemental briefs on the question of whether the defendant had been given a meaningful hearing. The Appellate Court did not issue an order directing the parties to be prepared to discuss that issue at oral argument. The issue arose for the first time during the state's rebuttal argument through questions by the Appellate Court panel. The panel questioned the state, for example, on whether there had been any discussion of making Judge Espinosa available for cross-examination and whether there had been any objection to the manner in which her affidavit was received. The Appellate Court thereafter did not instruct the parties to file supplemental briefs concerning these issues.

The court in *Blumberg* specifically phrased the requirement that a party be heard on an issue as "an opportunity . . . to be heard *by way of supplemental briefing* . . . ." (Emphasis added.) Id., 161–62; see also id., 157 n.26 (citing "the requirement that parties must be given an opportunity to brief an issue that the reviewing court has raised sua sponte"). Our case law also has established that if "the Appellate Court decides to address an issue not previously raised or briefed, it may do so only after requesting supplemental briefs from the parties or allowing argument regarding that issue." *State* v. *Dalzell*, 282 Conn. 709, 715, 924 A.2d 809 (2007), overruled in part on other grounds by *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162 n.34, 84 A.3d 840 (2014).

Consistent with this jurisprudence, this court, on occasion, has issued orders instructing parties to be prepared to discuss certain issues at oral argument without ordering supplemental briefing on those issues. See, e.g., *Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 808 n.9, 104 A.3d 727 (2014) (whether plaintiff was aggrieved); *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 35 n.6, 84 A.3d 1167 (2014) (whether jurisdiction existed for cross appeal); *Broadnax* v. *New Haven*, 284 Conn. 237, 240 n.4, 932 A.2d 1063 (2007) (whether final judgment existed); *Board of Education* v. *Nonnewaug Teachers' Assn.*, 273 Conn. 28, 31, 866 A.2d 1252 (2005) (impact of recently issued decision). Principally, this court has used this procedure when a jurisdictional concern comes to this court's attention after the parties have filed their briefs, which is a matter that the court

is required to address even if not raised by the parties. *Blumberg*, supra, 311 Conn. 128.

Thus, it is clear that, at a minimum, the parties must be provided sufficient notice that the court intends to consider an issue. It is implicit that an opportunity to be heard must be a *meaningful* opportunity, in order to satisfy concerns of fundamental fairness. See id., 156 n.24 ("[f]undamental fairness dictates that a party must be afforded the opportunity to address an unpreserved claim on appeal"). The parties must be allowed time to review the record with that issue in mind, to conduct research, and to prepare a response. A meaningful opportunity is not provided when a party is asked a question about a different claim, not previously raised, for the first time at oral argument. Moreover, the Appellate Court's questions in the present case did not make clear that it intended to decide whether a retrospective competency proceeding was permissible and that it would make such a determination under a test that had not been raised in the briefs of either party. Accordingly, the Appellate Court failed to provide the state with an opportunity to be heard on the dispositive issue.

If the absence of such an opportunity was the only concern in the present case, we could remand the case to the Appellate Court to afford the parties that opportunity. See, e.g., *Haynes* v. *Middletown*, 306 Conn. 471, 475, 50 A.3d 880 (2012). The state also contends, however, that it was unfairly prejudiced by the fact that this issue was never raised before the trial court. The state argues that it would have proceeded differently had the defendant objected to the procedure used by Judge Schuman. Specifically, the state contends, if the defendant had objected to having any judge other than Judge Espinosa conduct the remand proceedings, it would not have objected to Judge Espinosa[11] conducting the proceedings or would have actively sought to have her do so.[12]

Unfair prejudice may be found "when a party demonstrates that it would have presented additional evidence or that it otherwise would have proceeded differently if the claim had been raised at trial. . . . Moreover, because it may be difficult for a party to prove definitively that it would have proceeded in a different manner and, as a result, would suffer unfair prejudice if the reviewing court were to consider the unpreserved issue, once that party makes a colorable claim of such prejudice, the burden shifts to the other party to establish that the first party will not be prejudiced by the reviewing court's consideration of the issue." (Citations omitted.) *Blumberg*, supra, 311 Conn. 156–57.

In the present case, the state has made a colorable claim that it was unfairly prejudiced. Had the state known that it should have sought to have Judge Espinosa preside over the remand proceedings, it thereby could have alleviated the Appellate Court's con-

cerns regarding the substance of her affidavit. General Statutes § 51-197c (f) provides a mechanism that would have allowed Judge Espinosa to preside over the remand proceedings notwithstanding her elevation to the Appellate Court. Section 51-197c (f) allows Appellate Court judges to preside over trial court matters with the permission of the Chief Justice of the Supreme Court when "the public business may require it."[13]

The defendant has failed to advance any argument as to why the state could not have sought to have Judge Espinosa preside over the proceedings or why such an attempt would have been futile. The defendant has accordingly failed to meet his burden to overcome the presumption that the state was unfairly prejudiced. We conclude, therefore, that the Appellate Court abused its discretion by deciding the appeal on the basis of an unpreserved issue because the requirements articulated in *Blumberg* were not met.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the claim raised by the defendant in his appeal to that court.

In this opinion the other justices concurred.

[1] The charges included kidnapping in the first degree, robbery in the third degree, robbery involving an occupied motor vehicle, larceny in the third degree, and stalking in the first degree. See *State* v. *Connor*, supra, 292 Conn. 486, 503.

[2] On March 16, 2011, Judge Espinosa was sworn in as a judge of the Appellate Court. On March 6, 2013, she was sworn in as an Associate Justice of the Supreme Court. Because this appeal involves matters that occurred before Justice Espinosa's appointment to the Supreme Court, and for clarity, we refer to Justice Espinosa as Judge Espinosa in this opinion.

[3] The timing and process whereby Judge Espinosa's affidavit was actually entered as a court exhibit is not clear from the record.

[4] Although the defendant's brief to this court argues to the contrary, at oral argument he conceded that no objection had been made to Judge Schuman presiding over the proceedings.

[5] Judge Bear issued a separate opinion concurring in part and dissenting in part, in which he primarily took issue with the majority's conclusion that Judge Espinosa could not conduct another remand proceeding because she had made herself a material witness and, therefore, the proper remedy was a new trial. *State* v. *Connor*, supra, 152 Conn. App. 817, 827–29.

[6] Nunc pro tunc means "now for then" and is used, inter alia, to refer to competency determinations made after the time at which the underlying proceeding took place, in the present case, the defendant's criminal trial. *State* v. *Connor*, supra, 152 Conn. App. 799–800; see also Black's Law Dictionary (10th Ed. 2014).

[7] This fact rebukes the defendant's claim that the Appellate Court reviewed Judge Schuman's decision under the abuse of discretion standard.

[8] The Appellate Court nevertheless faulted the trial court for refusing to give weight to the defendant's medical records. *State* v. *Connor*, supra, 152 Conn. App. 793 n.11.

[9] The Appellate Court noted: "[I]nsofar as [Judge Espinosa's] affidavit indicated that she believed the defendant was capable of carrying out the basic tasks needed to present his own defense without counsel, the trial transcript offers a conflicting statement: '[If] you represent yourself, you're not going to walk out of here free, I can tell you that. *Because you are not capable*, you think you are, you think you know what you're doing, but you're not.' " (Emphasis in original.) *State* v. *Connor*, supra, 152 Conn. App. 808–809. Contrary to the Appellate Court, we believe that the latter statement, read in proper context, indicates that Judge Espinosa was warning the defendant that he lacked the skills to *successfully* represent himself. See *State* v. *Connor*, supra, 292 Conn. 529–30 ("We emphasize that the issue

to be decided on remand is not whether the defendant lacked the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel. Indeed, it appears quite clear that he did lack such skill or knowledge. That fact, however, has no bearing on whether he was competent to represent himself for purposes of *Edwards*. Rather, the determination of his competence or lack thereof must be predicated solely on his ability to 'carry out the basic tasks needed to present his own defense without the help of counsel' . . . notwithstanding any mental incapacity or impairment serious enough to call that ability into question." [Citation omitted.]).

[10] We acknowledge that the Appellate Court varyingly framed the issue before it, making it difficult to characterize with precision the ultimate issue on which it based its decision. For example, it initially framed the issue as whether the hearing was meaningful, but later characterized the trial court's error as having "fail[ed] to resolve the doubt as to the defendant's *competency*." (Emphasis in original.) *State* v. *Connor*, supra, 152 Conn. App. 814. The parties agreed, however, that the trial court had resolved that doubt, but took different positions as to whether the court's resolution was the correct one. Thus, irrespective of how it framed the issue, the Appellate Court decided that some procedural flaw rendered the judgment improper. The Appellate Court did not simply decide the substantive issue raised by the parties under plenary review, rather than the abuse of discretion standard sought by the parties.

[11] The justices of the Supreme Court and the judges of the Appellate Court are also judges of the Superior Court. General Statutes §§ 51-198 (a), 51-197c (a), and 51-165 (6).

[12] The state also claims in its reply brief that, had it known that there was a concern about the availability of individuals "who were in a position to interact with the defendant before and during trial"; *State* v. *Connor*, supra, 152 Conn. App. 805; it would have presented testimony from other persons who had had such interactions, and it also would have joined in a request of the defendant to have the remand hearing litigated before Judge Espinosa. Although it is debatable whether this argument is sufficiently distinct from the prejudice argument in the state's main brief and thus should not be considered; see *State* v. *Jose G.*, 290 Conn. 331, 341 n.8, 963 A.2d 42 (2009) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]); we need not resolve this question because the state's principal prejudice argument is sufficient.

[13] The Appellate Court panel disagreed whether Judge Espinosa could preside over the proceedings if it reversed the judgment rendered by Judge Schuman because Judge Espinosa had filed an affidavit, thereby potentially making herself a material witness. Compare *State* v. *Connor*, supra, 152 Conn. App. 812 n.26, with id., 828–29 (*Bear, J.*, concurring and dissenting); see also Code of Judicial Conduct, Rule 2.11 (a) (5) (C) (judge shall disqualify himself or herself in any proceeding in which judge's impartiality might reasonably be questioned, including where judge "was a material witness concerning the matter"). The defendant does not argue that Judge Espinosa could not have presided over the proceedings for this reason. Indeed, had the defendant timely raised any of the concerns expressed by the Appellate Court before Judge Schuman, these concerns arguably could have been resolved before Judge Espinosa's affidavit was admitted as a court exhibit. See footnote 3 of this opinion.