******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY T. CONNOR
(AC 34970)

Sheldon, Mullins and Bear, Js.

*Argued October 17, 2016—officially released February 7, 2017*

(Appeal from Superior Court, judicial district of Hartford, McMahon, J. [competency determination]; Miano, J. [competency determination; motion to proceed by self-representation]; Espinosa, J. [judgment]; Schuman, J. [remand hearing].)

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy* and *Anne Mahoney*, state's attorneys, and *Denise B. Smoker*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. This case returns to us following a remand by our Supreme Court. On remand, our Supreme Court has directed us to consider whether the trial court improperly determined that the defendant, Jeffrey T. Connor, was competent to represent himself at his criminal trial. *State* v. *Connor*, 321 Conn. 350, 375, 138 A.3d 265 (2016).[1] Having considered that question, we conclude that the trial court did not abuse its discretion in determining that the defendant was competent to represent himself. Accordingly, we affirm the judgment of the trial court.

The complicated and lengthy procedural history of this case previously was set forth by our Supreme Court in *Connor II*. "The defendant was charged with a number of crimes[2] in connection with the abduction of his former wife. . . . The extensive pretrial proceedings reflected repeated attempts by the trial court to ascertain the defendant's competency both to stand trial and to discharge his court-appointed counsel and represent himself.[3] . . . The defendant's competency had been called into doubt due to the fact that he had suffered a debilitating stroke and exhibited signs of mental illness. . . . The efficacy of these proceedings was complicated by the defendant's refusal to cooperate with the medical professionals tasked with evaluating him and his intermittent unresponsiveness in court. . . . In reliance on the opinion of several medical professionals, the trial court, *McMahon, J.*, concluded that the defendant's refusal to cooperate was volitional . . . and the trial court, *Miano, J.*, thereafter concluded that the defendant was malingering, and found him competent to stand trial. . . .

"The defendant's case proceeded to trial before Judge Espinosa,[4] who concluded that the defendant's unresponsiveness during jury selection reflected his continued malingering . . . [and] that the defendant was competent to represent himself. . . . Judge Espinosa therefore permitted the defendant to represent himself, but appointed his defense counsel as standby counsel. . . . A jury [found] the defendant [guilty] on all but one of the charges against him." (Citations omitted; footnotes added; internal quotation marks omitted.) *Connor II*, supra, 321 Conn. 354–56.

The defendant directly appealed from the judgment of conviction to our Supreme Court, claiming that Judge Espinosa improperly determined that he was competent to represent himself. See *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009). At the time of the defendant's trial, our law dictated that a defendant who had been found competent to stand trial necessarily also was competent to represent himself. See *State* v. *Day*, 233 Conn. 813, 825, 661 A.2d 539 (1995) ("a defendant who has been found competent to stand trial as a matter of

state law also is competent to waive the right to counsel"), overruled in part by *Connor I*, supra, 292 Conn. 528 n.29. Thus, as our Supreme Court observed in *Connor I*, given that the defendant had been found competent to stand trial, Judge Espinosa "had no alternative" but to permit the defendant to represent himself. *Connor I*, supra, 528.

While the defendant's direct appeal to our Supreme Court was pending, however, the United States Supreme Court clarified in *Indiana* v. *Edwards*, 554 U.S. 164, 177–78, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008), that a defendant who is competent to stand trial nevertheless may lack the competency to represent himself. *Connor I*, supra, 292 Conn. 525. Therefore, pursuant to *Edwards*, a state may "insist [on] representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (Internal quotation marks omitted.) Id.

In light of *Edwards*, our Supreme Court exercised its supervisory authority in *Connor I* to announce the following rule: "[W]hen a trial court is presented with a mentally ill or mentally incapacitated defendant who, having been found competent to stand trial, elects to represent himself, the trial court also must ascertain whether the defendant is, in fact, competent to conduct the trial proceedings without the assistance of counsel." Id., 527–28. After so ruling, our Supreme Court remanded the defendant's case specifically to Judge Espinosa so that she could determine, in accordance with *Edwards* and *Connor I*, "whether the defendant then was competent, notwithstanding any mental disability, to conduct the trial proceedings by himself." Id., 528.

The remand proceedings began before Judge Espinosa in early 2010. Shortly thereafter, and before the proceedings concluded, Judge Espinosa was elevated to the Appellate Court. As a result, Judge Schuman assumed control of the proceedings. On May 25, 2012, Judge Schuman held an evidentiary hearing, and, on June 6, 2012, he issued a written memorandum of decision wherein he determined that the defendant had been competent to represent himself at his criminal trial.

The defendant appealed from Judge Schuman's competency determination, claiming that Judge Schuman abused his discretion in concluding that the defendant had been competent to represent himself during his criminal trial. See *State* v. *Connor*, 152 Conn. App. 780, 100 A.3d 877 (2014), rev'd, 321 Conn. 350, 138 A.3d 265 (2016). This court reversed the trial court's judgment on the ground that the remand hearing held by Judge Schuman was procedurally flawed. Id., 810. This court then directed the trial court to grant the defendant a

new criminal trial. Id., 817.

The state then filed a petition for certification to appeal this court's decision. After granting certification to appeal, our Supreme Court concluded that this court erred in reversing the judgment rendered by Judge Schuman and in ordering a new trial because this court had raised, sua sponte, a ground not argued by the parties, namely, the procedural inadequacy of the remand hearing. *Connor II*, supra, 321 Conn. 354. Accordingly, our Supreme Court remanded the case back to this court with direction to consider the defendant's claim that "the trial court abused its discretion when it erroneously concluded that the [defendant] was competent to represent himself at [his criminal] trial despite his mental illness or mental incapacity." (Internal quotation marks omitted.) Id., 364; see also id., 375.

We first set forth our standard of review. Our Supreme Court has not indicated what standard of review applies to a determination that a defendant is competent to represent himself where such a determination is made after the defendant already has been found competent to stand trial. The parties argue that in these circumstances we should review the trial court's determination that the defendant had been competent to represent himself during his criminal trial for an abuse of discretion. We agree with the parties and, therefore, review the trial court's competency determination for an abuse of discretion. Cf. *Connor I*, supra, 292 Conn. 510 ("we will not overturn the trial court's determination with respect to whether the defendant knowingly and voluntarily elected to represent himself in the absence of an abuse of discretion"); *State* v. *Cuesta*, 68 Conn. App. 470, 480, 791 A.2d 686 (reviewing trial court's determination that defendant was competent to stand trial for an abuse of discretion), cert. denied, 260 Conn. 914, 796 A.2d 559 (2002).

"In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Williams*, 146 Conn. App. 114, 150–51, 75 A.3d 668 (2013), aff'd, 317 Conn. 691, 119 A.3d 1194 (2015). "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *State* v. *Hamlett*, 105 Conn. App. 862, 873, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008). "Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.)

*State* v. *Kendall*, 123 Conn. App. 625, 651, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010).

We next review the instructions and guidance that our Supreme Court had provided in *Connor I*. Our Supreme Court explained: "[T]he issue to be decided on remand is not whether the defendant lacked the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel. Indeed it appears quite clear that he did lack such skill or knowledge." *Connor I*, supra, 292 Conn. 529–30. "Rather, the determination of his competence or lack thereof must be predicated solely on his ability to carry out the *basic tasks* needed to present his own defense without the help of counsel . . . notwithstanding any mental incapacity or impairment serious enough to call that ability into question." (Citation omitted; emphasis added.) Id., 530. The United States Supreme Court has stated the "basic tasks needed to present [one's] own defense" include "organiz[ing] [a] defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury." (Emphasis omitted.) *Indiana* v. *Edwards*, supra, 554 U.S. 176.

In determining whether the defendant was able to carry out the aforementioned basic defense tasks, our Supreme Court further explained that the trial court on remand "should consider any and all relevant information," including (1) "the extent to which the defendant's competence to represent himself may have been affected by mental illness, by the stroke that he had suffered, and by any memory problems"; *Connor I*, supra, 292 Conn. 529; (2) "the extent to which the defendant may have been feigning mental problems"; id.; (3) "the manner in which the defendant conducted the trial proceedings"; id., 530; (4) "whether [the defendant] grasped the issues pertinent to those proceedings"; id.; and (5) "[the defendant's] ability to communicate coherently with the court and the jury." Id. With this background in mind, we now turn to the proceedings that took place at the trial court following *Connor I*.

In February, 2010, Judge Espinosa, as directed by our Supreme Court in its remand order in *Connor I*, began the proceedings to determine whether the defendant had been competent to represent himself during his criminal trial. Judge Espinosa presided over two hearings. At the first hearing, the defendant "exhibit[ed] the same behavior" that he had exhibited at trial by sitting silently in his wheelchair and being unresponsive. At the second hearing, the defendant informed Judge Espinosa that he would not participate in the remand proceedings, and he was uncooperative in assisting Judge Espinosa in determining whether she should appoint counsel for him. Before Judge Espinosa conducted further proceedings, however, she was elevated to the Appellate Court.

Following Judge Espinosa's elevation to the Appel-

late Court, Judge Schuman assumed responsibility for the proceedings to determine whether the defendant had been competent to represent himself during his criminal trial. At a February, 2012 hearing before Judge Schuman, the defendant again was unresponsive, and Judge Schuman appointed counsel for the defendant. Finally, on May 25, 2012, Judge Schuman conducted an evidentiary hearing on the merits of the defendant's claim. At that hearing, Judge Schuman was presented with "three categories" of evidence: (1) the trial transcripts, (2) "medical evidence," and (3) an affidavit executed by Judge Espinosa dated January 13, 2012.

On the basis of those three categories of evidence, Judge Schuman concluded that the defendant was competent to represent himself during his criminal trial. First, with respect to the trial transcripts, Judge Schuman concluded that they revealed "the manner in which the defendant conducted the trial proceedings"; *Connor I*, supra, 292 Conn. 530; how "[the defendant] grasped the issues pertinent to those proceedings"; id.; and "[the defendant's] ability to communicate coherently with the court and the jury." Id. In particular, Judge Schuman cited the defendant's questioning of venirepersons, his effective use of peremptory challenges, his "short but adequate" cross-examinations of the complainant and eyewitnesses, and his presentation of a closing argument that contained "a reasonably appropriate discussion of the evidence."

Judge Schuman also carefully highlighted instances during the criminal trial in which the defendant's tactics were improper or ineffective. For example, during jury selection, the defendant purported to quote the Bible and asked philosophical questions that were confusing and irrelevant. Moreover, during the state's case, the defendant inadvertently incriminated himself during his cross-examination of the state's witnesses and attempted to admit his criminal record and a police report that implicated him as the perpetrator of the crime.

Judge Schuman also found that the defendant experienced difficulty in presenting the defense's theory, asking the sole defense witness proper questions, and making an appropriate closing argument that did not refer to irrelevant and improper[5] matters. Additionally, Judge Schuman observed that the defendant generally struggled throughout the trial with comprehending legal concepts such as admissibility, prejudice, exhibits, hearsay, and circumstantial evidence.

Regarding the second category of evidence, the medical records offered by the defendant, Judge Schuman concluded that they were not probative of the defendant's ability to represent himself at his criminal trial. The medical records consisted principally of seven volumes of Department of Correction health charts relating to periods of incarceration that the defendant had

served between the years of 1991 and 2010.[6] Although the charts themselves appear largely indecipherable to the layperson,[7] Judge Schuman concluded that "both *before* and *after* the criminal trial, healthcare professionals diagnosed the defendant with having various psychiatric or psychological diseases or disorders." (Emphasis added.) In its final analysis, however, the court afforded no weight to the medical records.

Last, Judge Schuman reviewed Judge Espinosa's affidavit,[8] wherein she attested to the following: (1) "The defendant appeared to be engaged in every aspect of the trial proceedings"; (2) "The defendant demonstrated an understanding of the evidence presented by the state and what was occurring during each distinct phase of the trial"; (3) "At times, the defendant made statements concerning irrelevant matters . . . [that] were a calculated attempt on the part of the defendant to elicit sympathy and, thus, persuade the court or the jury to find in his favor"; (4) "[T]he defendant demonstrated the ability to communicate appropriately and coherently with the court"; (5) "[The defendant] demonstrated the ability to address the jury in an appropriate and coherent manner"; (6) "At no point during the proceedings did the defendant exhibit the effects of a mental incapacity or impairment such that I questioned whether he possessed the mental ability to conduct the trial proceedings without the assistance of counsel"; (7) "[T]he defendant carried out the basic tasks needed to present his own defense in a manner similar to other self-represented defendants who appeared before me"; and (8) "Although the defendant did not conduct the trial proceedings with the technical skill or knowledge of an attorney, he demonstrated that he was sufficiently capable of carrying out the basic tasks needed to present his own defense without the assistance of counsel."

Judge Schuman afforded "considerable deference" to Judge Espinosa's affidavit. Indeed, Judge Schuman determined that the defendant had been competent to represent himself during his criminal trial "based largely on Judge Espinosa's firsthand assessment of the defendant's performance" during that time. Judge Schuman reasoned that "the transcript is no substitute for the opportunity, which only Judge Espinosa had, to observe whether the defendant had a reasonable understanding of how the trial process worked, to assess whether his occasional unorthodoxy represented fumbling ineptitude or wilful strategy, and to measure just how well the defendant interacted with the jury."

Accordingly, in determining whether the defendant had possessed the "ability to carry out the basic tasks needed to present his own defense without the help of counsel"; (internal quotation marks omitted) *Connor I*, supra, 292 Conn. 530; Judge Schuman carefully considered and weighed all of the evidence that the parties

presented to the court. On the basis of his review of that evidence, Judge Schuman ultimately determined that the defendant was competent to represent himself during his criminal trial. After reviewing the record in this case, we conclude that Judge Schuman did not abuse his discretion in making that determination.

First, it was reasonable for Judge Schuman to conclude that the trial transcripts revealed that the defendant was able to carry out basic defense tasks. Indeed, our review of the trial transcripts discloses that the defendant was able to (1) ask venirepersons questions that potentially could have revealed whether they held a bias toward the defendant and the crimes with which he was charged,[9] (2) elicit, during cross-examination, an inconsistency between the complainant's testimony and her statement to police regarding the location where she claimed she was abducted, (3) elicit from an eyewitness during cross-examination the fact that the witness told law enforcement that he was unsure of the perpetrator's race, (4) elicit an inconsistency between the physical description of the perpetrator that an eyewitness provided to law enforcement and the defendant's actual physical appearance, (5) present and argue a motion for judgment of acquittal, and (6) challenge the state's case during his closing argument by highlighting the lack of physical evidence and the inconsistencies in the testimony of the state's witnesses.

Second, it was also reasonable for Judge Schuman to have concluded that the defendant's medical records were not helpful in determining whether the defendant could have represented himself at his criminal trial. Judge Schuman noted that none of the medical personnel who made the records was present during the 2006 criminal trial, and defense counsel acknowledged at the remand hearing that no medical records that were made at the time of the criminal trial.

Moreover, even assuming that the records may have suggested that the defendant was suffering from a mental incapacity at the time of his criminal trial, the trial transcripts revealed that he "may have been feigning mental problems." *Connor I*, supra, 292 Conn. 529. For instance, on the first day of jury selection, the defendant admitted to Judge Espinosa that he had been feigning a comatose state during the pretrial proceedings because he disliked his trial counsel and the judge who had presided over the proceedings.

Ultimately, and perhaps most significantly, evidence that the defendant was suffering from a mental incapacity at the time of his criminal trial, without more, is insufficient to prove that the defendant was not competent to represent himself. See *Connor I*, supra, 292 Conn. 528 (stating that issue before trial court on remand would be "whether the defendant then was competent, *notwithstanding* any mental disability, to conduct the trial proceedings by himself" [emphasis

added]). The defendant was required to demonstrate at the remand proceedings not merely that he suffered from a mental incapacity, but rather, more specifically, how that mental incapacity impacted his ability to carry out basic defense tasks. See id., 525 (remanding to trial court so that it could determine "whether the defendant is entitled to a new trial because he lacked the ability, *due* to mental illness or incapacity, to perform the basic functions necessary for the trial of his case" [emphasis added]). The defendant's medical evidence, however, failed to link his purported mental incapacity to an inability to carry out basic defense tasks. Therefore, Judge Schuman reasonably concluded that the defendant's medical records were unhelpful in determining whether the defendant was competent to represent himself at his criminal trial.

Third, in light of the fact that our Supreme Court in *Connor I* contemplated expressly that Judge Espinosa would conduct the remand proceedings; *Connor I*, supra, 292 Conn. 528 ("the case must be remanded for a determination by the court, *Espinosa, J.*, as to whether the defendant then was competent, notwithstanding any mental disability, to conduct the trial proceedings by himself"); it was reasonable for Judge Schuman to rely heavily on Judge Espinosa's affidavit.[10]

"[T]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Internal quotation marks omitted.) Id., 523–24. Indeed, the United States Supreme Court observed in *Edwards* that a trial judge who presides over a defendant's competency hearing and trial "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Indiana* v. *Edwards*, supra, 554 U.S. 177.

In the present case, Judge Schuman reasonably relied on the observations and findings of Judge Espinosa, who, as the presiding judge at the defendant's criminal trial, had the unique opportunity to assess the defendant's competency. Her affidavit certainly indicates that the defendant was sufficiently capable of carrying out the basic tasks needed to present his own defense without the assistance of counsel. In particular, Judge Schuman credited Judge Espinosa's observations "that the defendant appeared to be engaged in and knowledgeable about every aspect of the trial, that the defendant demonstrated the ability to address the jury in an appropriate and coherent manner, and that the defendant's occasional reference to irrelevant matters appeared to be a calculated attempt to elicit sympathy."

In the end, it is not lost upon us that Judge Schuman was "troubled" by the defendant's lack of effectiveness[11] at certain points during the trial. Our Supreme Court

stressed in *Connor I*, however, that "the issue to be decided on remand is *not* whether the defendant lacked the technical legal skill or knowledge to conduct the [criminal] trial proceedings effectively without counsel." (Emphasis added.) *Connor I*, supra, 292 Conn. 529–30. Although the defendant certainly lacked a technical proficiency that may have otherwise rendered his self-representation more effective, his ability to perform the basic tasks necessary to self-representation was demonstrated by his participation in voir dire, his questioning of witnesses, his presentation of a motion for a judgment of acquittal and a closing argument, and his communications with the court and jury. See *Indiana* v. *Edwards*, supra, 554 U.S. 176.

In light of the foregoing, the trial court reasonably determined, on the basis of the evidence presented to it during the remand proceedings, that the defendant had been able to carry out the basic tasks needed to present his own defense without the help of counsel during his criminal trial. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the defendant had been competent to represent himself at his criminal trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Throughout this opinion, we will refer to the defendant's direct appeal to our Supreme Court, *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009), as *Connor I*. Hereafter, we will refer to our Supreme Court's decision in *State* v. *Connor*, 321 Conn. 350, 138 A.3d 265 (2016), as *Connor II*.

[2] "The charges included kidnapping in the first degree, robbery in the third degree, robbery involving an occupied motor vehicle, larceny in the third degree, and stalking in the first degree." *Connor II*, supra, 321 Conn. 354 n.1.

[3] As discussed in more detail subsequently in this opinion, at the time of the defendant's criminal trial, our law dictated that "any criminal defendant who ha[d] been found competent to stand trial, ipso facto, [wa]s competent to waive the right to counsel as a matter of federal constitutional law." *State* v. *Day*, 233 Conn. 813, 824, 661 A.2d 539 (1995) overruled in part by *Connor I*, 292 Conn. 483, 528 n.29, 973 A.2d 627 (2009). Accordingly, upon determining that the defendant was competent to stand trial, the trial court did not undertake any additional inquiry before concluding that he was also competent to represent himself. Id., 825–26. Thus, while both the defendant's competency to stand trial and his right to represent himself were at issue, the inquiry by the trial court focused, as it had to at that time, solely on whether the defendant was competent to stand trial.

[4] For clarity, we refer to Justice Espinosa as Judge Espinosa in this opinion because, as the Supreme Court noted, this appeal involves matters that occurred before Justice Espinosa's appointment to the Supreme Court. *Connor II*, supra, 321 Conn. 355 n.2.

[5] For instance, Judge Schuman noted that the transcript revealed that Judge Espinosa had "stopped [the defendant] from attempting to display his legs to the jury and cracking his arm for the jur[ors] [in] what [Judge Espinosa] believe[d] [was] an attempt to incur sympathy from them." Additionally, the defendant mentioned repeatedly that he had suffered a stroke.

[6] The defendant also offered the findings from a 2009 competency exam that he underwent in connection with criminal charges that are unrelated to this appeal. Considering that the 2009 exam occurred nearly three years after the trial that is the subject of this appeal, Judge Schuman reasonably could have afforded little weight to the findings therein. The findings of that exam, nevertheless, indicated that the defendant was competent to stand trial in 2009, notwithstanding his refusal to cooperate.

[7] At the remand hearing, the defendant did not call any medical experts to opine on his health and how it may have affected his ability to represent

himself in 2006. Defense counsel also informed the court at the remand hearing that he was unsuccessful in retaining a mental health expert who could review the trial transcripts and offer an opinion as to the defendant's ability to represent himself.

[8] "The defendant never sought to have Judge Espinosa testify, nor did he argue that her affidavit was lacking in any way." *Connor II*, supra, 321 Conn. 363.

[9] The defendant posed the following questions to some venirepersons: (1) "[S]o you went through a divorce . . . [was] it a good divorce or a bad one?"; (2) "Violence in families. Like domestic disputes . . . There's none in your family?"; and (3) "If [someone] broke . . . the law one time that doesn't necessarily mean he broke it a second time?"

[10] Defense counsel acknowledged at the remand hearing that the case was "remanded specifically to Judge Espinosa for a finding." The defendant, however, never objected to Judge Schuman conducting the hearing. Again, his precise claim on appeal is solely that based on the three categories of evidence presented at the remand hearing, Judge Schuman could not reasonably have concluded that he was competent to represent himself.

[11] Notwithstanding this concern, Judge Schuman did note that the defendant was effective in obtaining an acquittal on one of the charges, that it was "not clear what a competent attorney would have done differently" with respect to the other charges that "were [not] readily defensible," and that "the defendant's attempts to inject irrelevant matters into trial may have been calculated to gain sympathy."

———————————————————